Dennis Earl MASON, Petitioner-Appellant,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent-Appellee.

No. 75–1104.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1975.

Decided Feb. 17, 1976.

---

R. Steven Brown, Asst. Federal Public Defender, Springfield, Mo., made argument for petitioner-appellant. Typewritten appellant's brief and appellant's reply brief were filed R. Steven Brown, Asst. Federal Public Defender, and David R. Freeman, Federal Public Defender, Kansas City, Mo.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., made argument for respondent-appellee. Printed brief for appellee was filed by J. Whitfield Moody, Asst. U. S. Atty., and Bert C. Hurn, U. S. Atty, Kansas City, Mo.

Before HEANEY, BRIGHT and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

Dennis Earl Mason, an inmate at the United States Medical Center for Federal Prisoners at Springfield, Missouri, appeals from a final judgment of the United States District Court for the Western District of Missouri dismissing his habeas corpus attack on the conditions of his confinement without prejudice for failure to exhaust available administrative remedies. The petitioner challenges the constitutionality of our holding in *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974), that "a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court."[1] We find the exhaustion-

---

1. The petitioner limits his constitutional challenge to the exhaustion-of-administrative-remedies requirement of *Willis v. Ciccone*, 506 F.2d 1011 (8th Cir. 1974), to its effect on federal

of-administrative-remedies requirement to be constitutional and deny Mason's petition on the merits.

## I

The petitioner's constitutional challenge is premised on Article I, Section 9, Clause 2 of the Constitution which reads:

The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

He argues that *Willis v. Ciccone, supra,* in effect, suspends the right of habeas corpus and cannot be maintained.

█ It is clear from the opinion in *Willis* that no such result was intended. The Court fully recognized, and we now reaffirm, that:

There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law.

*Harris v. Nelson,* 394 U.S. 286, 292, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969).

█ Moreover, the requirement that prisoners first exhaust available prison grievance procedures before petitioning for habeas corpus relief in a federal court does not in fact suspend the right of habeas corpus. "Suspend" is defined to mean: "To debar, usually for a time, from the exercise of a function or enjoyment of a privilege * * *." [2] Under *Willis,* the power to grant habeas corpus relief is at all times fully existent. The prior exhaustion of prison grievance procedures is merely a requirement, imposed under the discretionary authority of the court, designed to control the time and mode of the exercise of that power. The requirement was the product of the felt needs for effective prison and judicial administration. The Court said in *Willis*:

The extraordinary nature of the writ requires this. It should not be resorted to until other more conventional remedies have failed. When proper grievance procedures exist, their utilization benefits the prisoner, the prison authorities and the courts. If such procedures are given a fair chance to succeed, not only will the prisoner receive expeditious relief when he is entitled to it, the administrative burden processing federal suits places upon prison authorities will greatly decrease as well.[3]

*Willis v. Ciccone, supra* at 1015 (footnote omitted).

The administrative exhaustion requirement of *Willis* is similar in effect, if not in justification,[4] to the rule of *Ex Parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), embodied in 28 U.S.C. § 2254, that a state prisoner exhaust his state court remedies before applying for federal habeas corpus relief. *See Preiser v. Rodriguez,* 411 U.S. 475, 492, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). It is not unconstitutional.

█ Further, there is no constitutional significance to the fact that a federal prisoner's claims challenging the conditions of his confinement must first be presented to

---

prisoners. The holding of *Willis,* however, extended also to state prisoners seeking federal habeas corpus relief. *Id.* at 1015 n.3.

**2.** The Compact Edition of the Oxford English Dictionary (Oxford University Press, 1971).

**3.** *See Willis v. Ciccone, supra* at 1015 n.4; "The Prison Ombudsman," The Center Magazine, Vol. VIII, No. 6 (November/December 1975) 6–10.

**4.** Federalism is not a consideration applicable to the administrative exhaustion requirement of *Willis* as it applies to federal prisoners. For a discussion of the justification for the requirement of exhaustion in habeas corpus as it applies to state prisoners, compare the majority and dissenting opinions in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The majority in *Preiser* indicated that state prisoners must exhaust state administrative remedies as well as state judicial remedies before seeking federal habeas corpus relief.

an administrative body rather than a judicial tribunal.[5] The prior submission of disputes to administrative agencies is common to our law. The practice promotes and permits: (1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute;[6] (3) the autonomy of the prison administration;[7] and (4) judicial efficiency from the settlement of disputes at the prison level. See McKart v. United States, 395 U.S. 185, 194–195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).[8] The benefits from prior administrative review are substantial. The proce-

dure must be given an opportunity to succeed.[9]

Moreover, there can be no fear that the scope of judicial review will be narrowed because of the prior resort to the prison grievance procedure. The administrative decision is final neither as to the law nor as to the facts necessary for the judicial determination of the habeas corpus claim. When warranted, a full evidentiary hearing is available before the district judge. The federal courts remain the final arbiters of law and fact in fulfillment of their duty to safeguard individual freedoms.[10] Cf. Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); Oestereich v. Selec-

5. The administrative exhaustion requirement of Willis is limited to petitions in habeas corpus that challenge the conditions of confinement. The Court said:

> In conclusion, we therefore hold that prisoner petitions which seek a writ of habeas corpus and relief from prison conditions must allege * * * (3) exhaustion of prison grievance procedures.

Willis v. Ciccone, supra at 1019 (emphasis added).

6. See, e. g., James Vernon Sellers v. Dr. P. J. Ciccone, Director, etc., 530 F.2d 199 (8th Cir. 1976).

7. See 18 U.S.C. §§ 4001 and 4042.

8. For a critical discussion of the exhaustion-of-administrative-remedies rule, see Davis, Administrative Law Treatise § 20.01 (1970 Supp.).

9. Since the decision in Willis v. Ciccone, supra, the number of habeas corpus petitions filed from the United States Medical Center for Federal Prisoners has not decreased. Between November 15, 1974, and October 12, 1975, 497 petitions were filed with the District Court. Of these, 21 were dismissed for failure to exhaust administrative remedies, and 131 were dismissed for that reason in combination with other reasons. The Medical Center may not, however, be an accurate guide, for, unlike the conventional prison, its population consists of both convicted and unconvicted persons committed for a relatively brief period for physical and mental examination and treatment. Many of the habeas corpus petitions from the institution raise claims whose nature are not susceptible to prior administrative review, e. g.: (1) challenges to the validity of a court order of commitment under 18 U.S.C. § 4244; (2) challenges to the continued custody under a 18 U.S.C. § 4244 commitment when the evaluation has been completed and the committing court

fails or refuses to order a return; (3) challenges to the denial of needed medical, surgical or psychiatric treatment that present issues of special urgency; (4) challenges complaining of the effect of an allegedly illegal detainer request to secure an allegedly illegal state warrant for arrest, or an allegedly illegal parole violator warrant issued by the United States Board of Parole; and (5) challenges seeking a speedy trial.

Between November 15, 1974, and October 21, 1975, 477 administrative grievances were filed by inmates at the Medical Center. These grievances were disposed of at the institutional level as follows: (1) 255 received an unfavorable ruling; (2) 123 received a favorable ruling; and (3) 99 were not acted upon. Ninety-five appeals were taken to the regional level. Of these: (1) 67 received an unfavorable ruling; (2) 6 received a favorable ruling; (3) 17 were returned to the institutional level; and (4) 5 were not acted upon. To the final level, 49 appeals were taken. Of these: (1) 27 received an unfavorable ruling; (2) 5 received a favorable ruling; (3) 9 were returned to the regional or institutional level; (4) 1 was ruled moot; and (5) 7 were not acted upon.

Of the 477 administrative grievances filed, 134 received a favorable ruling.

10. It is true, as the petitioner claims, that state prisoners can challenge directly the conditions of their confinement under 42 U.S.C. § 1983 without first exhausting other available remedies. See Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). But, while that route is not available to the federal prisoner, he, like the state prisoner, has his constitutional claims determined in a federal court. Moreover, the federal prisoner's claims can be determined swiftly and are not subjected to the time-consuming procedures of a full civil trial.

*tive Service Board No. 11*, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932).

■ The exhaustion of administrative remedies may cause delay if the procedures are improperly structured. *Willis* made clear, however, that the administrative procedures must be expeditious, providing a real possibility for relief upon an impartial view of the prisoner's complaint.[11] The lapse of time between submission and disposition can render administrative relief inadequate. *See Dixon v. State of Florida*, 388 F.2d 424, 425 (5th Cir. 1968); *Smith v. State of Kansas*, 356 F.2d 654, 656 (10th Cir. 1966), *cert. denied*, 389 U.S. 871, 88 S.Ct. 154, 19 L.Ed.2d 151 (1967).

We are concerned that the grievance procedures, currently in effect at the Springfield Medical Center, are neither as independent nor as simple as the Court anticipated they would be.[12] The Council of this Court was informed by the Director of the Bureau of Prisons that an independent hearing officer from outside the prison system would be appointed at the Medical Center to function as a quasi-judicial administrative officer with the responsibility to hear grievances after the prisoner had been apprised of the institution's response to his complaint. It was contemplated that the hearing would be integrated into the appellate process at the institutional level. We are hopeful that the existing procedures will be simplified by eliminating some of the steps in the grievance procedure, that the existing time limits will be shortened and that an independent hearing officer at the appellate level will be established. Failure to do so may require a reconsideration of *Willis*. Such reconsideration might well result in the reimposition upon the District Court for the Western District of Missouri of the overwhelming burden of processing all prisoner complaints. The burden will be reimposed at a time when

---

11. Exhaustion of available administrative remedies is unnecessary in the unusual case.

12. Policy Statement 2001.6A states:

If an offender cannot resolve his complaint through informal contact with staff, and wishes to file a formal complaint for administrative remedy, he should secure a copy of form BP–DIR–9 and write his complaint in the space provided. He may obtain assistance from other offenders or from staff to help him complete the form. The offender should then give the completed form to the designated staff member who in turn will provide a signed receipt for him. Distribution of the copies of each form is noted on each page.

The complaint ordinarily must be filed within 30 days from the date on which the basis of the complaint occurred unless it was not feasible to file within such period. Institution staff have up to 15 days from receipt of the complaint, excluding week-ends and holidays, to act upon the matter and provide a written response to the offender. When the complaint is of an emergency nature and threatens the offender's immediate health or welfare, reply must be made as soon as possible, and within 48 hours from receipt of the complaint. The institution duty officer may be utilized in such instances.

\* \* \* \* \* \*

If an offender is not satisfied with the institution's response, he may file an appeal to the Regional Director, Bureau of Prisons, through the Prisoners' Mail Box within 30 days of receipt of the Warden's response. This should be done on form BP–DIR–10 and *must* include a completed copy of BP–DIR–9 (the initial complaint) with the institution's response. A receipt for his appeal will be sent to the offender by the Regional Director, who will then reply within 20 days from receipt of the appeal, excluding week-ends and holidays.

If the offender is not satisfied with the reply from the Regional Director, he may file a further appeal to the Assistant Director, Office of General Counsel and Review, Bureau of Prisons, through the Prisoners' Mail Box within 30 days of receipt of the Regional Director's response. This should be done on form BP–DIR–11, and *must* include a completed copy of *both* the form BP–DIR–9 (the original complaint) *and* the form BP–DIR–10 (appeal to the Regional Director). A receipt for this appeal will be sent to the offender and within 20 days from that date, excluding week-ends and holidays, a reply will be made.

\* \* \* \* \* \*

If the time limit expires without a reply, it will be deemed to be a denial of the request. If dissatisfied with the response to his complaint and appeals, the offender is free to file suit in an appropriate court and attach documentary proof that he exhausted his administrative remedy. (Emphasis included.)

the workload of that court will make impossible the prompt attention to prisoner complaints that they can receive in a properly structured administrative proceeding.

■ We hold that the present grievance procedure, while in need of substantial revision, has not been demonstrated to be so complicated and time consuming that it must be deemed inadequate. *Cf. Young v. Ragen*, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949); *Marino v. Ragen*, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170 (1947) (per curiam) (Rutledge, Douglas and Murphy, JJ., concurring).

## II

■ Mason has failed to allege exhaustion of his available administrative remedies, and under *Willis*, his petition was properly dismissed without prejudice. In the interests of judicial efficiency, however, we find it appropriate to pass upon the merits of his claim.[13]

■ The petitioner's allegation of cruel and unusual punishment is based merely on the denial of his request to be treated by a particular doctor at the Medical Center. It is not alleged that his malady is so severe that only a specialist at the Medical Center can properly treat it. Indeed, the petitioner admits in his petition that, according to medical opinion, he can be treated by any doctor at any institution. His claim does not rise to a constitutional level. *See Wilbron v. Hutto*, 509 F.2d 621, 622 (8th Cir. 1975); *Cates v. Ciccone*, 422 F.2d 926, 928 (8th Cir. 1970).

Mason's petition for habeas corpus relief is denied.

---

**13.** We are not confronted, as is the case with habeas corpus actions by state prisoners, with considerations of federalism. *See Smith v. Wolff*, 506 F.2d 556, 558–559 (8th Cir. 1974).