Andrew BOSTON a/k/a Leon Jones, Plaintiff,

v.

Susan STANTON, Ray Coleman, and Samuel Newman, Jr., Defendants.

No. 77-0907-CV-W-2.

United States District Court, W. D. Missouri, W. D.

May 8, 1978.

Andrew Boston, pro se.

Willard B. Bunch, County Counselor, Jackson County, John Edward Cash, Associate County Counselor, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

COLLINSON, District Judge.

Plaintiff, a former inmate of the Jackson County Jail now confined at the Missouri State Penitentiary, Jefferson City, has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 challenging various conditions and occurrences in the Jail. In a previous order, the Court dismissed plaintiff's claims for equitable and declaratory relief as moot, granted provisional leave to proceed in forma pauperis on plaintiff's claims for damages, and directed defendants to show cause why leave to proceed in forma pauperis should not be granted unconditionally. Defendants have now filed their response to the show cause order. In addition, plaintiff has filed a motion for appointment of counsel, a motion to vacate the Court's order of February 28, 1978 granting defendants an extension of time in which to file their response to the show cause order, and a motion "for a summary and/or default judgment."

Before turning to the issues in this action, it is necessary to discuss plaintiff's involvement with Jail officials at some

length. It appears from records submitted by defendants that Boston originally came to the Jail in March 1977 after he was charged with stealing property valued at more than fifty dollars. He remained confined there until June 30, 1977. On that day, defendant Newman, a jail employee, escorted him to the Truman Medical Center for a medical examination. Once out of Newman's sight, plaintiff simply walked away from the hospital. He was not recaptured until October 29, 1977.

Upon his return to the Jail, it appears that plaintiff was taken before an institutional disciplinary panel for a hearing. The hearing report, submitted by defendants as an exhibit, states that Boston admitted walking away from the hospital. The disciplinary panel ordered Boston to be confined in maximum security for thirty days and permanently assigned to the fourteenth floor of the Jail. Plaintiff appealed to defendant Stanton, asserting that he did not escape because no restraints were broken and no personal violence threatened or committed. He also repeated his earlier defense that Newman left the hospital before he departed. Defendant Stanton reversed the order directing permanent confinement on the fourteenth floor, but otherwise affirmed the decision.

By the time plaintiff returned to the Jail, it appears that defendant Newman was Floor Supervisor for the midnight shift in the Maximum Security section. Plaintiff alleges that he was verbally and physically harassed by Newman while confined in maximum security. Plaintiff also asserts that he was deliberately served cold or unpalatable food and that his rations were reduced by Newman. The complaint also asserts that Newman was responsible for a shakedown in which plaintiff was allegedly physically harassed by an unnamed "300 pound corrections officer." Plaintiff admits, however, that he threw one of his meals at a control center window prior to the shakedown described above. Records submitted by defendants indicate that the shakedown was ordered only after plaintiff threw food at the control center window. The records also indicate that plaintiff was

put on a diet of sandwiches and fruit until he decided not to throw food.

The complaint also refers to two other grievances. First, plaintiff asserts that defendants denied his access to the Jail Law Library, and interfered with his right of self-representation by denying him access to commissary items, such as paper and envelopes. He also alleges that he was denied proper medical care. No factual allegations are advanced to support this claim.

To summarize, plaintiff alleges (1) that he was improperly confined in maximum security, (2) that he was subjected to various forms of physical and verbal harassment by Jail officials, (3) that he was denied access to the Jail Law Library, and (4) that he was denied proper medical care. He seeks $15,000 damages from defendant Stanton, $10,000 from defendant Coleman, and $20,000 from defendant Newman.

As a part of their response to the Court's show cause order, defendants have filed a motion for order denying leave to proceed in forma pauperis. The motion is accompanied by numerous documents, some relating to plaintiff's confinement in the Jail and others detailing his state criminal trial. On the basis of these documents, defendants assert that:

All of plaintiff's alleged deprivations and injuries are either:

1. reasonable administrative responses to actions admitted by his pleadings, or by other documents plaintiff himself wrote, e. g., placement in maximum security, putting plaintiff on sandwich rations, use of a security force, frisk of plaintiff, and transfer to C-section of Maximum Security;

2. clearly refuted by the record, e. g., alleged "denial" of medical attention, and alleged interference with plaintiff's self-representation, or,

3. de minimus, e. g., the cold food, and alleged threats.

Defendants also assert that plaintiff can prove no set of facts which would establish a right to recover against the defendants.

Defendants' motion must be considered against the law concerning construction and disposition of *pro se* prisoner complaints. It is well settled that *pro se* complaints must be construed liberally. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1973). This process is described more fully in *Serna v. O'Donnell,* 70 F.R.D. 618, 621 (W.D.Mo.1976):

> Lenient construction of prisoner complaints involves either looking at the surface of the infrequent well drawn pleading or, in the more usual case of a poorly drawn pleading, looking below its surface or between the lines for matters either not raised properly or at all. After understanding what the plaintiff is alleging, the Court must, if there is a request to proceed in *forma pauperis,* determine whether the case is frivolous or malicious. Whereas in understanding a pleading, leniency is necessary to counteract the plaintiff's lack of legal experience, the same degree of predisposition in favor of the *pro se* plaintiff is not called for when a determination is made under 28 U.S.C. § 1915(d).

The law surrounding the determination that a complaint is frivolous is discussed in *Jones v. Bales,* 58 F.R.D. 453 (N.D.Ga.1972):

> Section 1915 provides the statutory basis for in forma pauperis proceedings in federal courts. Subsection (d) provides in part that "[t]he court may . . . dismiss the case [filed in forma pauperis] . . . is satisfied that the action is frivolous or malicious." The statute does not state how the court is to become so satisfied and does not define the words frivolous or malicious. Furthermore, to this Court's knowledge, neither the Supreme Court nor the Court of Appeals for this circuit has construed the statute in these respects. This Court, however, reads subsection (d) as a very broad grant of discretion to the courts regarding management of in forma pauperis actions. Subsection (d) is a grant of power to dismiss in situations where dismissal under Federal Rule of Civil Procedure 12 might be improper. . . .

The Federal Rules of Civil Procedure are inadequate to protect the courts and defendants—who it should be remembered pay for their defense—from frivolous litigation from indigent prisoners. The Rules are liberal; they are designed so that most cases will actually go to trial if the parties so desire. Under current standards, Rule 12 motions to dismiss are rarely properly granted. *See Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Haines v. Kerner,* 404 U.S. 519 [92 S.Ct. 594, 30 L.Ed.2d 652] (1972); *Campbell v. Beto,* 460 F.2d 765 (5th Cir. 1972). The liberal approach of the Rules is probably desirable, but the rules contemplate litigants who are limited by the realities of time and expense. They also contemplate litigants with a basic respect for accuracy. As Judge Duniway has written, "[W]e know from said experience with habeas corpus and 2255 cases that imprisoned felons are seldom, if ever, deterred by the penalties of perjury. They do not hesitate to allege whatever they think is required in order to get themselves even the temporary relief of a proceeding in court." *Weller v. Dickson,* 314 F.2d 598, 602 (9th Cir. 1963) (concurring opinion). A reasonably intelligent prisoner with a willingness to misrepresent facts can often avoid both 12b dismissal and summary judgment, although he actually has no chance of eventual success in his suit. Even if summary judgment can be won by a defendant, much expense may already have been suffered by him in retaining counsel to conduct the defense.

It is plain to this Court that courts need an extra measure of authority when faced with actions proceeding in forma pauperis—particularly where the action is brought by a prisoner seeking damages. And it is this court's conclusion that Congress has granted that extra authority by enacting 28 U.S.C. § 1915(d). In light of 1915(d)'s general purpose, the specific term "frivolous" refers to an action in which the plaintiff's realistic chances of ultimate success are slight. *See, e. g., Urbano v. Sondern,* 370 F.2d 13 (2d Cir.

1966), aff'g 41 F.R.D. 355 (D.Conn.1966); *Weller v. Dickson,* 314 F.2d 598 (9th Cir. 1963) (Duniway, J. concurring). This is not to say that such suits should not be allowed filed or be dismissed abruptly or that a court should readily assume frivolity because it is prisoner filed. To the contrary, it is incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of same. In the former instance, the case should proceed with the assistance of the court. However, upon reasonable effort where the contrary appears it should be dismissed.

58 F.R.D. at 463–64. *See also Clark v. Zimmerman,* 394 F.Supp. 1166 (M.D.Pa. 1975); *State of Louisiana ex rel. Purkey v. Ciolino,* 393 F.Supp. 102 (E.D.La.1975). Thus, if after appropriate expansion of the record, the Court finds that plaintiff's realistic chances of ultimate success on any or all of the issues presented are slight, that portion of the complaint must be dismissed as frivolous. The Court will examine each of plaintiff's allegations separately.

Initially, plaintiff appears to allege that he was improperly confined in maximum security. In making this allegation, plaintiff does not discuss his hearing before the institutional disciplinary committee on November 2, 1977. Records submitted by defendants show that plaintiff was notified of the hearing and informed of his rights at least 72 hours in advance. Defendant also fails to note his appeal from the committee's decision. These records, also submitted by defendants, show that plaintiff's appeal to defendant Stanton was partially successful.

It is well settled that confinement of a prisoner in maximum security does not by itself violate the constitutional guarantee against cruel and unusual punishment. *See, e. g., Crowe v. Leeke,* 540 F.2d 740 (4th Cir. 1976); *Gregory v. Wyse,* 512 F.2d 378 (10th Cir. 1975); *McCray v. Sullivan,* 509 F.2d 1332 (5th Cir. 1975); *O'Brien v. Moriarty,* 489 F.2d 941 (1st Cir. 1974); *cf. Adams v. Carlson,* 488 F.2d 619 (7th Cir. 1973).

Further, the documents submitted by defendants are strongly persuasive that Jail officials took steps to comply with applicable due process guidelines before placing Boston in maximum security. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Goldsby v. Carnes,* 429 F.Supp. 370 (W.D.Mo.1977). The Court must find that plaintiff has little if any realistic chance of proving that defendants violated his constitutional rights or that he is entitled to damages because of his confinement in maximum security. *Wycoff v. Brewer,* No. 77–1586, 572 F.2d 1260 (8th Cir., March 23, 1978); see also *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Cox v. Cook,* 420 U.S. 734, 95 S.Ct. 1237, 43 L.Ed.2d 587 (1975); *Wood v. Strickland,* 420 U.S. 308 (1975); *Ervin v. Ciccone,* 557 F.2d 1260 (8th Cir. 1977). This claim must be dismissed as frivolous. *Jones v. Bales, supra.*

Plaintiff's next allegation is that he was subjected to physical and verbal harassment while confined in the Jail. The complaint details various incidents alleged to be harassment; they are:

(1) that upon arrival in Maximum Security, defendant Newman went to plaintiff's cell, awakened him, and stated, "Your soul belongs to Jesus but your ass belongs to me." In response to a question as to whether the foregoing statement constituted a physical threat, defendant Newman allegedly said, "You'll see."

(2) that breakfast, served by shift workers supervised by defendant Newman, was unpalatable. Hot food was allegedly cold, and cold food warm. Jelly packages were submerged in the oatmeal and bread was soaked with coffee. Salt was allegedly placed in oatmeal.

(3) that a "goon squad" came to plaintiff's cell after he threw food at the control center, conducted a shakedown, and searched plaintiff. According to the complaint, the "goon squad" went to plaintiff's cell, ordered him out, insulted him, and

placed him against the wall in a spread-eagle position while the search was conducted. "Each time [Boston] attempted to explain that [his] movement was not violent . . the 300 lb. goon [sic] would apply his method to silence me, applying pressure finger-tip style [sic] into [Boston's] shoulder blades . . .."

(4) that Jail officials placed plaintiff on a diet of sandwiches and lunch meat and cheese after the food-throwing incident.

The complaint itself provides further information about the throwing incident on November 21. Plaintiff states that the men in his section of the Jail were served breakfast at about 6:30 a. m. He states that the men began to complain about the quality of the food and that he deliberately threw his oatmeal at the control center window, intending to create a disturbance which would end defendant Newman's alleged harassment. He states that he returned to his cell and "locked up"—closed himself in—immediately after the incident.

Defendants have submitted the Jail log for Boston's section as an exhibit. The log consists of entries made by correctional officers present in the section which describe day-to-day section operation and events occurring within the section. It also contains orders from supervisory personnel to the correctional officers responsible for maximum security. On November 21, Wayne Kernes made the following entry in the log: "Boston is moved to Max C–4 after throwing food on the control center window. Boston will be getting sandwiches until it is felt he wants to eat the regular food tray meals." Entries from the next day state that Boston went on a hunger strike; the complaint also alludes to such a strike. On November 23, a log entry reads, "Manager Ray Coleman authorizes Boston to resume having regular food trays again instead of sandwiches." On November 27, the log states that Boston complained about being served cold food, and that he felt the cold food was part of a conspiracy to mistreat him. On November 28, Wayne Kernes made the following log notation: "Boston,

Andrew, C–4, is to be getting regular meals as of 11–23–77 . . . . Should Boston start throwing food trays he will go back on sandwiches then." Defendants concede that plaintiff may have been fed sandwiches instead of full meals between November 23 and 28.

▮ These claims of harassment are frivolous. As noted in *Sheffey v. Greer*, 391 F.Supp. 1044 (E.D.Ill.1975), and *Patmore v. Carlson*, 392 F.Supp. 737 (E.D.Ill. 1975), constitutional liability must be based on something more than an offense to fastidious squeamishness or private sentimentalism. *Sheffey v. Greer, supra* at 1046, *citing Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

It is apparent that the last two incidents of harassment—the shakedown and reduction of rations—were caused by plaintiff's own actions in throwing food at the control center. Each represented a justifiable reaction by Jail officials to a potentially disruptive and dangerous incident. The allegations of physical violence contained in the complaint—the acts of the unnamed 300 pound correctional officer—do not rise to constitutional levels by any standard, *Sheffey v. Greer, supra*. Further, the Court notes that Jail supervisory personnel ordered plaintiff returned to a regular diet within 48 hours of the food-throwing incident. When this order was not conveyed to all correctional officers in plaintiff's section of the Jail, Wayne Kernes made a second entry in the Jail log to ensure that plaintiff would get the diet to which he was entitled.

▮ The other two allegations of harassment—the alleged threats by defendant Newman and the allegedly cold or unpalatable food—do not rise to constitutional levels. It is settled that allegations concerning denial of hot meals do not state a cognizable claim, if prisoners are adequately fed. *Hoitt v. Vitek*, 497 F.2d 598 (1st Cir. 1974). Further, an occasional incident of a foreign object discovered in prison food raises no constitutional issue. *Lundsford v. Reynolds*, 376 F.Supp. 526 (W.D.Va.1974). In this circuit, allegations of verbal abuse,

threats or defamation by a guard to a prisoner are not cognizable under § 1983. *Ellingburg v. Lucas*, 518 F.2d 1196 (8th Cir. 1975).

There is nothing on the record before this Court that indicates that defendants engaged in any campaign of harassment against plaintiff at any time during his stay in the Jail. The incidents alleged to be harassment by plaintiff were either responses to incidents caused or instigated by plaintiff or actions that are not cognizable in a civil rights action. The Court has concluded, based on the information in the complaint itself and the materials provided by the defendants, that plaintiff's claims of harassment are chimerical. They will be dismissed as frivolous. *Jones v. Bales, supra.*

Plaintiff's third claim is that defendants denied him his right to self-representation. Although the precise nature of this claim is unclear, plaintiff does assert that he was denied access to the law library in the Jail, that commissary officials refused to sell him materials which he thought necessary to continue his "pro se struggle," and that officials interfered with the submission of pro se pleadings to the state courts.

The Jail log submitted by defendants sheds some light on this issue. On November 2, 1977, Wayne Kernes made the following notation in the log: "Boston was transferred from Max A to Max C [after disciplinary hearing]. Property was taken, itemized and he got rather mad because law books and such were taken and placed in his box. Boston may try to talk [sic] some of the items back, make sure he has only what Max C residents are to have. He was allowed to take legal papers with him and was informed law library was at his disposal (on program days.)" Court records submitted by defendants add more to the total picture surrounding Boston's "pro se struggle." Beginning in March 1977, Boston submitted the following documents to state court officials:

1. a letter styled "A Call for Help!" and addressed to Judge Leonard Hughes;

2. a typed *pro se* motion for reduction of bond and leave to proceed in forma pauperis dated March 25, 1977;

3. a handwritten *pro se* motion for leave to proceed in forma pauperis and appointment of counsel dated March 31, 1977; the motion was accompanied by a handwritten affidavit of poverty;

4. a handwritten *pro se* motion styled "Affidavit for Extension of Time to Prepare for Preliminary Hearing" dated March 31, 1977;

5. a handwritten *pro se* motion for bond reduction hearing dated March 31, 1977;

6. a letter styled "Constitutional Violations Existing within Jackson County Jail" and addressed to Judge Richard Sprinkle;

7. a second letter styled "Constitutional Violations Existing within Jackson County Jail" and addressed to Judge Richard Sprinkle; dated April 14, 1977;

8. a letter to Judge Sprinkle regarding a motion for restraining order previously filed by plaintiff;

9. a motion for restraining order to prevent jail officials from denying plaintiff access to the law library and meaningful access to the Court; dated April 12, 1977, and discussed in the letter described in number 8, *supra;*

10. a letter to Judge Sprinkle requesting an extension of time in which to find counsel other than the Public Defender;

11. a letter to Judge Sprinkle styled "In Re: Adjudicative Responsibilities" and dated November 13, 1977, requesting a reduction of bond and dismissal of Alice Jacks, Esq., as plaintiff's appointed counsel;

12. a motion for bond reduction hearing and reduction of bond dated November 15, 1977;

13. a letter to Alice Jacks dated November 15, 1977 styled "In Re: Lawyer, Client Conflict of Interest;" and

14. a letter to Judge Sprinkle styled "In Re: The more things change the more they remain the same especially for the Black, Brown, White ignorant masses, here in the House of Frankenstein.;" challenged alleged denial of access to envelopes and stamps.

Plaintiff also sent this Court numerous pleadings, letters and packets of exhibits, including one envelope containing several of the sandwiches served him in the Jail, while he was still confined in the Jail. The Court also notes that the Public Defender's Office was appointed to represent plaintiff in his state criminal trial after he requested representation. Alice Jacks, Esq., Assistant Public Defender, represented plaintiff during pendency of his state case, and although plaintiff expressed dissatisfaction with her services, Ms. Jacks filed several motion on plaintiff's behalf. She moved to withdraw as counsel only after plaintiff requested her withdrawal. Judge Sprinkle denied the motion to withdraw. It also appears that Lane Goddard, Esq., of the Public Defender's Office filed at least one motion in plaintiff's criminal case.

 Under the rule of *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), prisoner litigants must be given meaningful access to the courts, and prison officials are affirmatively obligated to provide prisoners "with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498. *See United States v. West*, 557 F.2d 151 (8th Cir. 1977). As *Bounds* makes clear, however, the right of access to a law library is not unlimited. The plan approved by *Bounds*, for example, envisaged that "inmates not facing court deadlines might have to wait three or four weeks for their turn at a library." *Id.* at 819, 97 S.Ct. at 1494. There is no right to unlimited access to a prison law library.

 In this case, plaintiff had access to the services of Alice Jacks, Esq., and, it appears, to at least one other attorney in the Public Defender's Office. Even if plaintiff desired to proceed *pro se* at trial,

see *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), this Circuit holds that appointment of an attorney to act as informal legal advisor for the litigant satisfies the *Bounds* test. *United States v. West, supra.* The records submitted by defendants and plaintiff's correspondence with this Court belie his claims that he was prevented from filing pleadings in state or federal court. The documents submitted by plaintiff show that he filed a flood of motions and letters in Jackson County Circuit Court, and a comparison of the dates on these letters with the file stamps placed on them by Court officials shows that the letters were promptly mailed. There is nothing whatsoever on the record to indicate that any court refused to accept plaintiff's pleadings because they were hand written on yellow legal paper. The Court also notes that plaintiff, who alleges that he could not buy stamps in the Jail, mailed the Court several envelopes, often requiring large amounts of postage. In short, the facts simply do not support plaintiff's claim that defendants denied him any significant part of his right of access to the courts or self-representation.

 Assuming for the sake of argument, however, that some deprivation of these rights has occurred, plaintiff is not entitled to damages. As noted in *Wycoff v. Brewer*, No. 77–1586, 572 F.2d 1260 at 1266–1267 (8th Cir., March 23, 1978):

However, it is one thing to grant to prison inmates, including violent or recalcitrant ones, prospective declaratory and injunctive relief designed to protect them in the future from unconstitutional practices or conditions. It is quite another thing to expose prison personnel in the higher echelons of prison administration and policy formulation, to personal pecuniary liability in suits brought by largely irresponsible inmates under § 1983. Such suits are frequently without merit and may be maliciously motivated. An inmate may use a suit or a threat of suit as a lever to obtain favorable treatment or a desirable work assignment. Since § 1983 suits are usually prosecuted in forma pau-

peris, and since prison officials may not constitutionally retaliate against a convict for invoking his right to access to the courts, inmates have essentially nothing to lose, including time, by prosecuting such actions, and they may gain something even if it is nothing but the satisfaction of harassing, inconveniencing and annoying those who have them in charge. To succeed on a claim for damages under § 1983, a plaintiff must show that defendants' actions violated his constitutional rights and have caused him compensable injury. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

 Plaintiff has alleged nothing from which this Court can assume that he has suffered any form of compensable injury from the acts described in the complaint. In fact, it is not even clear from the complaint that any of the defendants in this suit were ever involved in any of the alleged violations of plaintiff's right of self-representation. Giving the plaintiff the benefit of every possible doubt on this point, the expanded record simply does not support or offer any hope of supporting his claim for damages on this issue. While this claim might have supported entry of some form of declaratory and injunctive relief to prevent future injury, the possibility of such action was mooted by plaintiff's transfer to the Missouri State Penitentiary. Further, plaintiff's plea of guilty in his state criminal case may negate any claim that he was denied self-representation rights. This claim must therefore be dismissed as frivolous.

 Plaintiff's final allegation—that he was denied medical care—is frivolous. Jail records submitted by defendants show that jail paramedics visited plaintiff in his cell on at least eighteen occasions while he was confined in the Jail. Further, the Court notes that plaintiff was at Truman Medical Center for additional care at the time of his escape in June.

 To state a claim of cruel and unusual punishment cognizable under 42 U.S.C. § 1983, a prisoner must show that prison officials have evinced deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The *Gamble* standard reflects the well-established rule in this Circuit. *See, e. g., Mason v. Ciccone*, 531 F.2d 867 (8th Cir. 1976); *Wilbron v. Hutto*, 509 F.2d 621 (8th Cir. 1975); *Freeman v. Lockhart*, 503 F.2d 1016 (8th Cir. 1974); *Cates v. Ciccone*, 422 F.2d 926 (8th Cir. 1970). Even if plaintiff's allegations are viewed in the most favorable light possible, they show neither obvious neglect, intentional misconduct regarding his health, or heinous actions that would violate eighth or fourteenth amendment rights. *Freeman v. Lockhart*, 561 F.2d 728 (8th Cir. 1977). In fact, plaintiff has not alleged any facts from which the Court could infer that he had any medical problem at all. This claim is plainly frivolous and it will be dismissed.

 To summarize, the Court has carefully examined each of the four claims asserted by plaintiff, and has compared the allegations in the complaint against the documents offered by defendants. When read together, the complaint and exhibits show that plaintiff's difficulties in the Jail were largely caused by his own dissatisfaction with his confinement. Many of the actions challenged in this case were simply responses by Jail officials to provocation from plaintiff. Others, while possibly galling to plaintiff, simply cannot be construed as rising to the level of a constitutional violation, particularly where, as here, the record shows no evidence of any malicious intent, conspiracy or pattern of harassment. *See Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). For these reasons, the Court has concluded that plaintiff has little if any realistic chance of success on the merits of his claims. This complaint will therefore be dismissed as frivolous.

In view of the Court's disposition of this action, detailed discussion of plaintiff's motion to vacate, motion for appointment of counsel, and motion for default/summary

judgment is unnecessary. All three motions will be denied.

For the reasons stated above, it is

ORDERED (1) that plaintiff's motions for default/summary judgment, appointment of counsel and vacation of the Court's earlier order in this case should be and they are hereby denied. It is further

ORDERED (2) that this complaint should be and it is hereby dismissed as frivolous pursuant to 28 U.S.C. § 1915(d).