Theoplus Eugene HARVEY, Plaintiff,

v.

CLAY COUNTY SHERIFF'S DEPARTMENT, Katie Houston and Harry Kent, Defendants.

No. 78–CV–0951–W–3.

United States District Court, W. D. Missouri, W. D.

July 18, 1979.

Theoplus Eugene Harvey, pro se.

Leary G. Skinner and Steven R. Fuller, Clay County Counselors, Liberty, Mo., for defendants.

## MEMORANDUM AND ORDER

RUSSELL G. CLARK, District Judge.

Plaintiff, formerly confined at the Clay County Jail, Liberty, Missouri, has filed a *pro se* civil rights action under 42 U.S.C. § 1983 alleging that Jail officials refused to move him to another cell after he was involved in a fight with his cellmate. He also alleges that he was denied proper medical care for a hand injury sustained in the fight. He seeks damages for these alleged injuries.

In past orders, the Court granted provisional leave to proceed in forma pauperis, issued service, and directed defendants to show cause why unconditional leave to proceed in forma pauperis should not be granted. The Court also ordered defendants to expand the record in this case by submitting appropriate documentary information. The question for determination at this time is whether this action is frivolous within the meaning of 28 U.S.C. § 1915(d). If so, it is subject to dismissal.

Recognizing the special problems caused by *pro se* in forma pauperis litigation, this Court has discussed the concept of frivolity in a number of previous cases. *See Boston v. Stanton*, 450 F.Supp. 1049 (W.D. Mo.1978); *Serna v. O'Donnell*, 70 F.R.D. 618 (W.D.Mo.1976). Those cases define a frivolous action as one in which the plaintiff's realistic chances of success are slight. *Boston v. Stanton, supra*, at 1054. *See also Jones v. Bales*, 58 F.R.D. 453 (N.D.Ga.1972). The *Boston* standard of frivolity has been subjected to criticism, however. In *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979), the Fourth Circuit argued that the *Boston* standard of frivolity could not be reconciled with the holdings of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Citing this apparent difficulty, the *Boyce* court promulgated a different standard:

To satisfy the test of frivolousness under § 1915(d), it is . . . essential for the district court to find "beyond doubt" and under any "arguable" construction,

"both in law and in fact" of the substance of the plaintiff's claim that he would not be entitled to relief.

*Id.* at 952.

This definition of frivolity rests on *Haines, Gamble, supra,* which hold that a complaint may not be dismissed for failure to state a claim on which relief can be granted unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Haines v. Kerner, supra,* 404 U.S. at 520–21, 92 S.Ct. at 596 *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Haines* also establishes that in making the determination of whether a complaint states a claim on which relief can be granted, a court must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Id. Gamble* holds that these rules must be applied when a court dismisses a claim *sua sponte* for failure to state a claim on which relief can be granted. *Estelle v. Gamble, supra,* 429 U.S. at 106, 97 S.Ct. 285, 292 (1977).

*Boyce* then adopts the holding of *Watson v. Ault,* 525 F.2d 886 (5th Cir. 1976), that actions in the district court should be governed by the standard of frivolity established in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1968); an action is not frivolous under this standard unless it lacks arguable merit. *Boyce* equates the term "without arguable merit" with the standard evolved in *Conley, Haines* and *Gamble* ; thus, an action is frivolous only if it appears beyond doubt that a plaintiff can prove no set of facts to support his claim for relief. And, under *Boyce,* an action is not frivolous unless and until the Court determines that a plaintiff cannot adduce such facts under any arguable construction of the complaint.

*Boyce* assumes that standards of frivolity must be determined by reference to standards of pleading under the Federal Rules of Civil Procedure. The equation fails for a number of reasons.

Analysis of frivolity must begin from an obvious but often overlooked point: it is part of a statute creating affirmative conditions that must be met by a litigant before he can proceed in federal court without prepayment of the filing fee. The reasons for establishment of such conditions have been stated in a variety of cases: the need to conserve scarce judicial resources, *Stone v. Powell,* 428 U.S. 465, 491 n.31, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) the need to protect defendants from abuse and harassment; *Wycoff v. Brewer,* 572 F.2d 1260 (8th Cir. 1978); *Green v. Wyrick,* 462 F.Supp. 357 (W.D.Mo.1978); the need to take account of the fundamentally different nature of much in forma pauperis litigation, *Cruz v. Beto,* 405 U.S. 319, 328 n.9, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (Rehnquist, J., dissenting); and the need to ensure that an actual case or controversy exists. *Ellis v. State of Maine,* 448 F.2d 1325, 1327 (1st Cir. 1971), makes the last point cogently:

> [T]here should be a burden on petitioner to come into court with his case, not simply to try to make one out. This does not mean   .   .   .   with his full case, but he must show merit, not just personal opinion.

Obviously, these considerations, and the standards of due process and equal protection that are involved with them, *see United States v. MacCollom,* 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976), go far beyond the technical considerations that led to the pleading rules embodied in Rules 8 and 12, *Fed.R.Civ.P.,* and the decisions in *Conley, Haines* and *Gamble.*

Considerations similar to those underlying § 1915 have led to imposition of pleading standards more stringent than might otherwise be required under the Civil Rules. In the *United States v. MacCollom, supra,* the Supreme Court held that an indigent litigant seeking a free transcript for use in a pending action under 28 U.S.C. § 2255 was required to "show   .   .   .   there   .   .   .   was a basis, grounded on some articulable facts, for believing that a transcript would assist him in his § 2255 proceeding." *Id.* at 329–30, 96 S.Ct. at 2093 (Blackmun, J., concurring). This "particularized need" rule is clearly a pleading stan-

dard, and its roots lie not in the considerations of pleading that led to Rule 8, but in the considerations of economy and protection that also underlie § 1915. *See* Comment, *Restricting the Indigent's Right to a Transcript,* 1976 Wash.U.L.Q. 318, 325–26 & n.39 (1977). A similar standard applies under 28 U.S.C. § 2250, which permits applicants in other habeas corpus actions to receive portions of the trial record without cost only upon a showing of need and relevance. *United States ex rel. Williams v. State of Delaware,* 427 F.Supp. 72 (D.Del. 1976); *Irby v. Swenson,* 361 F.Supp. 167 (W.D.Mo.1973).

■ Thus, to vindicate the principles underlying § 1915, courts may properly establish pleading standards for in forma pauperis actions that are different from, or more stringent than, those established by the Civil Rules. *Conley, Haines,* and *Gamble,* do not prohibit such standards, either expressly or by implication, because, by their own terms, they only establish a standard for use in judging motions to dismiss under *Fed.R.Civ.P.* 12(b)(6). That *Gamble* involved sua sponte dismissal for failure to state a claim does not require a different conclusion. Courts have long had such power under Rule 12. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1356 n.43 (2d ed. 1969).

Moreover, by equating § 1915 with Rules 8 and 12, *Boyce* encourages the erroneous notion that frivolity must be determined only from the four corners of the complaint. The philosophical bases for this notion fail for the reasons stated above. Further, there are many examples in which an action satisfying the *Boyce* pleading standard is frivolous. For example, a facially non-frivolous complaint might become frivolous when viewed in light of the plaintiff's past conduct in the court. *See, e. g., In re Green,* 598 F.2d 1126 (8th Cir. 1979); *Carter v. Telectron, Inc.,* 452 F.Supp. 944 (S.D.Tex. 1977). A complaint that appears to be non-frivolous when standing alone may prove to be frivolous because another litigant, possibly relying on the services of the same "jailhouse lawyer," has presented an identi-

cal claim. *Cruz v. Beto, supra,* 405 U.S. at 329, 92 S.Ct. 1079. A complaint that is non-frivolous on its face may be repetitive, duplicitous, or an attempt to avoid an adverse decision in another district, thereby rendering it frivolous. *See, e. g., Van Meter v. Morgan,* 518 F.2d 366 (8th Cir. 1975); *Chatmon v. Churchill Trucking Co.,* 467 F.Supp. 79 (W.D.Mo.1979).

Finally, *Boyce* encourages another erroneous assumption: that the pleading standards of Rules 8 and 12 apply to all kinds of civil actions or claims. In habeas corpus actions, for example, a litigant must come forward with facts which, if proven, would entitle him to relief. *Procunier v. Atchley,* 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971). This standard goes considerably beyond the "notice pleading" principles of Rules 8 and 12. In this regard, *Boyce* also fails to take adequate account of the specialized pleading requirements imposed by Rule 9 or certain statutes. For example, under the Tort Claims Act, the plaintiff must affirmatively plead exhaustion of administrative remedies. *West v. United States,* 592 F.2d 487 (8th Cir. 1979). A similar rule may apply in actions under the Freedom of Information Act. An adequate standard of frivolity cannot be developed without accounting for these specialized requirements.

In practical terms, the obvious advantages that may follow from prompt dismissal of a complaint will be outweighed in many cases by the perils involved.

The first such peril is clear: in assessing any complaint filed in forma pauperis, there is a substantial likelihood of misinterpretation. Many *pro se* complaints, which compose the vast bulk of all actions filed in forma pauperis,

> contain a large variety of allegations that are difficult to separate and evaluate; and commonly the allegations are contained in a long, often illegible, handwritten [document] from the plaintiff.

Aldisert Report No. 2, at 9. Many others are choked with factual allegations, many irrelevant, and citations to cases or statutes, which can be irrelevant or, in some cases,

completely contradictory. These perils of "translation," of making an intelligible complaint out of a *pro se* missive, are such that there is a substantial likelihood that a legitimate complaint or grievance may be misinterpreted or construed away entirely.

Second, the "liberal construction" envisaged by *Boyce* carries with it the very real danger that the court will reconstruct a complaint based upon its assumptions about the plaintiff's intentions or the facts. When courts engage in such exercises, they implicitly become advocates for or advisors to the *pro se* litigant, thereby assuming the function of surrogate counsel and threatening the duty to remain impartial at all phases of the case.

Experience teaches that the devices envisaged under the Rules for the cure of such deficiencies do not work in most *pro se* cases. In the experience of this Court, the vast majority of all *pro se* litigants have proven to be incapable of submitting an amended complaint rectifying dispositive deficiencies in their original submissions. Most *pro se* litigants do not understand the purposes of discovery or use it for the purposes intended by the framers of the Civil Rules; this Court regularly receives interrogatories and requests for documents in *pro se* cases that bear little, if any, relation to issues in the case or are little more than attempts by litigants to rummage through institutional files or find any derogatory information that may be available about the defendant. Similarly, answers to interrogatories in many *pro se* cases are simply restatements of the conclusory allegations that appear in the complaint. The pretrial conference envisaged by the rules has served in this district as an effective, if informal, arbitration proceeding allowing for settlement of many prisoner civil rights actions through concessions from prison officials, but its worth as an issue-narrowing device is at best suspect in this context.

The perils involved in *Boyce*'s "liberal construction" and the failure of other pretrial devices in *pro se* cases point out the necessity of obtaining accurate and timely information about a *pro se* in forma pauper-

is claim at the earliest possible moment. To this end, the Aldisert Report recommended, and this district adopted, a procedure requiring defendants to submit a preliminary response in many cases where a litigant seeks leave to proceed in forma pauperis. After the Court conducts an initial review of a litigant's economic status, it affords the defendant an opportunity to come forward with factual information—prison records, medical reports, court records, for examples—that put the plaintiff's allegations in clearer context. In the great majority of cases, the information submitted by defendant is sufficient to show that a claim has been litigated by the plaintiff in another district, that the true nature of the dispute involved does not rise to constitutional level, that the plaintiff has not exhausted administrative remedies, or that the action is frivolous in some other way. In other cases, the information has been such as to require full plenary proceedings, and possibly a trial.

This arrangement has obvious advantages. It enables the Court to make an informed decision about frivolity by reference to the reality of the situation, rather than by guess as to the nature of a claim. It enables review of the frivolity determination on the same basis, with the distinct possibility that the total time and expense involved in the litigation will be decreased. And by requiring expansion of the record, it protects the unskilled litigant and ensures to a degree not possible under *Boyce* that his claim will be reviewed carefully and objectively.

Applying the "realistic chance of success" standard to the expanded record in this case, which includes extracts of jail logs, medical records, affidavits and other factual response from the parties, the Court finds that plaintiff's claims are frivolous.

As originally tendered, plaintiff's first claim could be construed as alleging that Jail officials refused to separate him from one Rick Bain, his cellmate, after the two were involved in a fight in their cell. Subsequent submissions by plaintiff indicate, however, that plaintiff notified jail person-

nel of the possibility of a fight before it happened and asked to be separated from Bain. Defendants Houston and Kent refused to move plaintiff or Bain, but admonished the two that fighting would not be permitted.

■ Assuming that these facts, which apparently are undisputed, form the entire basis for plaintiff's claim, he is not entitled to relief. Plaintiff's allegations amount to no more than a claim that defendants Houston and Kent were negligent in failing to take a more active role in separating the two potential combatants. As such, it is not cognizable in an action under § 1983. *Estelle v. Gamble, supra; Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Kimbrough v. O'Neil*, 545 F.2d 1059 (7th Cir. 1976); *Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976); *Beishir v. Schanzmeyer*, 315 F.Supp. 519 (W.D.Mo.1969).

If plaintiff's allegations are read in light of the facts revealed by the jail log submitted by defendants, this claim takes on an entirely different light. Plaintiff, according to the log, asked to be separated from Bain not because he was in danger from Bain but because Bain constantly talked. According to the log, plaintiff threatened to "go off" on Bain so that he would have to be removed from the Jail on a stretcher.

■ When viewed in this light, plaintiff's claim is no more than an attempt to recover damages from prison officials for his own failure to control himself. This Court will not sanction a procedure that allows prisoners, convicted or not, to obtain a better room by the simple expedient of threatening to kill or injure their cellmates. A prisoner has no right under ordinary circumstances to choose his cellmate and the choice made by prison officials is one of the "relatively minor [inconveniences] which are inevitably associated with membership in a closely supervised prison community." *United States ex rel. Miller v. Twomey*, 479 F.2d 701, 717 (7th Cir. 1973).

■ Plaintiff's second claim is also frivolous. Although a generous interpretation of the complaint might yield the conclusion that the named defendants participated in denial of medical care for plaintiff's hand, plaintiff's letter-pleading of May 7, 1979, indicates that the real basis for his claim is the alleged failure of the jail nurse and day shift supervisor, neither of whom are named as defendants, to refer his case to the doctor. Obviously, since neither defendant Houston nor defendant Kent were involved in this claim, they cannot be liable. *Boston v. Stanton, supra,* at 1058. And, since there are no allegations from which the Court can determine or infer that the alleged actions of the Jail nurse or supervisor were taken in accord with any official policy, directive, order or regulation, the Sheriff's Department cannot be liable. *Monell v. Department of Social Service of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Owen v. City of Independence*, 589 F.2d 335 (8th Cir. 1978).

Accordingly, for the reasons stated above, it is

ORDERED that the claims remaining for determination in this action are dismissed as frivolous. This action is dismissed in its entirety.