### Nathaniel SIMS, Plaintiff,

v.

### Doctor ZOLANGO of Westchester County Jail, Capt. Arboro of Westchester County Jail, Sgt. Mascolino, of Westchester County Jail, Officer Tony Malacarne, of Westchester County Jail, Defendants.

### No. 78 Civ. 1919.

United States District Court,
S. D. New York.

Oct. 17, 1979.

---

Nathaniel Sims, pro se.

Semel, McLaughlin & Boeckmann, by John M. Dellicarpini, New York City, for defendants.

## OPINION

OWEN, District Judge.

This is a *pro se* action by a New York State prisoner brought pursuant to 42 U.S.C. § 1983. Plaintiff's complaint alleges that the warden, the doctor, and various staff members of the Westchester County Jail in Valhalla, New York violated his civil rights by providing him with substandard medical care, by employing unwarranted force against him, and by subjecting him to mental torture. The numerous incidents which give rise to these allegations occurred between December 1977 and March 1978, while plaintiff was in jail awaiting trial on a rape charge.

The plaintiff's complaint, written in longhand, sets forth the factual basis of this action. First, plaintiff asserts that, although he continually sought medical attention, the prison doctor refused to see him for one and one-half months. Second, according to Sims, the events of December 23, 1977 are further evidence of the defendant's impermissible conduct.

On the day in question, Sims contends that one prisoner said that he was going to stab him as soon as he could and that a second prisoner threatened to kill him. Sims thereupon set fire to a paper bag to get the authorities' attention. Thereafter he was removed to another cellblock where he claims to have heard an officer in charge say that when "he [Sims] goes to sleep, I'll let a few of you out later to assault him sexually and beat him." Upon hearing this remark, Sims says that he took a light bulb from its socket, broke it and slashed his wrists with the glass. When he showed his wounds to an officer on duty, he was supposedly told, "That's not deep enough Sims, you should commit suicide"; thereafter, Sims continued to cut his arm until the officer called a nurse. Sims was taken to Grasslands, where the wound on his arm was treated. Although a Grasslands' psychiatrist allegedly recommended that Sims be placed in the prison hospital, he was returned to his cell.

Once back in his cell, Sims stated that he used the remaining broken glass to cut his arm again. At that point, Sims says he was removed from his cell, kicked and handcuffed to the bars of a holding pen where

he remained until morning. Defendants Zolango, the prison doctor, and Captain Arboro arrived in the morning. Sims claims that Zolango said that an overdose would be the best method to kill him, and that when asked whether "this was enough medicine to be an overdose," the doctor replied, "Yes." In addition, Sims recounts that someone asked Captain Arboro to check his pistol by firing a shot which Sims claims to have heard. After hearing the shot, Sims asked for and was given a glass of water and a cigarette as his "last request." After having been given an injection by a nurse, Captain Arboro checked his pistol and someone said, "Let's get this over with before the inmates awaken." Sims was then escorted down a corridor toward another room, but as that door was opened, Sims says that he swung around and hit an officer standing behind him. Sims was overpowered and chained to a bed; Arboro allegedly pointed his gun at Sims as if to fire but instead struck him over the heart with the pistol. Officer Cameron and another officer are also alleged to have struck the plaintiff. Sims remained chained to the bed all day until a nurse observed that he was beginning to "look bad." Later that evening, the block officer kept repeating, "Take this blackjack and hit him over the head when I open the door." At this point, Sims reports that he started a fire in his cell by burning his shirt, undershirt, socks, and paper, and he tried to set his mattress afire. Sims was again shackled to the bed until the next morning. When he was released he claims that he had no feeling in his thumbs, that the glass in his wounds remained untreated and that he had chest pains resulting from having been struck with a gun.

Certain of these allegations, if credited, and if viewed apart from Sims' admitted acts of provocation, state a cause of action under 42 U.S.C. § 1983. However, this complaint cannot be viewed in a vacuum. In deciding whether Sims' allegations are credible, this complaint must be examined as a totality as well as in the light of the allegations in various other actions brought or proposed by Sims. Some time in the summer of 1978, Sims was convicted of rape and related charges and sentenced to concurrent terms of 12½ to 25 years on each of four first degree rape counts. The conviction was affirmed by the Appellate Division and leave to appeal was denied by the Court of Appeals. Sims thereupon commenced a separate action in this court against the arresting officer, the district attorney, and the prosecution witnesses alleging deprivation of his constitutional rights. That action was dismissed by Judge Gagliardi on May 9, 1979. The instant action before me follows an earlier action filed in December 1976 (76 Civ. 5372) brought by Sims against the same Dr. Zolango and others. Sims concedes that the earlier action is "relatively the same" as the instant lawsuit. According to the docket sheet in the earlier action, after only a flurry of activity, the suit was dismissed by Judge Pierce on September 21, 1977 for failure to prosecute.

In this action, Sims has filed two motions for leave to file "supplemental" complaints. The first motion sought to add allegations charging the warden and medical director of the State Correctional Facility at Ossining, to which Sims had been transferred, with further neglect of his medical problems. The second proposed "supplemental" complaint contains almost identical allegations that the warden and medical director of Attica, to which Sims had been transferred after Ossining, had refused to provide him with adequate medical care.

Since the commencement of this case, I have been inundated with all sorts of submissions by Sims seeking all kinds of relief. Factual statements contained in those submissions are material to the court's assessment of the cogency of the plaintiff's case. For example, Sims stated that in February 1979 he again deliberately cut his arm to abort some claimed misconduct of officials at Ossining. Sims notes in his August 1978 submission that he suffered head and back injuries after having been kicked by certain inmates who, he contends, were "agents" of the state officials named as defendants in this action. In a submission on May 18, 1978, Sims stated that Dr. Zolango and oth-

ers have been destroying the United States mail in an apparent effort to prevent him from communicating with the court. Finally, on June 27, 1978, Sims complained that the defendants in this action "have removed screens which require a special tool to open and taken pictures. I assume they have done this to depict an escape attempt and I was shot or died [sic] from the fall out the window."

When Sims' present allegations are examined against the background of his earlier lawsuits and his most recent submissions, I conclude that this action is frivolous and should be dismissed pursuant to 28 U.S.C. § 1915(d).[1] I am completely satisfied that the allegations of official misconduct which purport to state a claim under § 1983 are without merit. Sims may well have been handcuffed to the cell bars or the mattress or may have been struck by a prison officer, but Sims' own statement of the facts set forth the justification for such conduct. Sims admits that he lights fires; he admits that he has slashed his wrists on more than one occasion to attract attention; and he admits that he first struck a prison guard before he was subdued by other guards. Under the foregoing circumstances, stripped of its hyperbole, the instant complaint merely documents the necessary and understandable reaction of prison officials to the dangerous behavior of a disturbed prisoner.

Similarly, I am hard pressed to believe that Sims has suffered a deprivation of his constitutional right to adequate medical care. Besides the fact that an identical suit by Sims against defendant Zolango was dismissed for failure to prosecute, Sims had lodged similar complaints under § 1983 against the wardens and doctors of each of the other two prisons to which he has been transferred. Logic dictates that not every doctor and warden and correction officer at three prisons is conspiring against Sims to deprive him of his constitutional rights. It is therefore clear that this court does not have before it a plaintiff whose charges of

neglect and of threats from inmates and staff (known and unknown) must be credited with *prima facie* validity.

The opportunity for a prisoner to freely abuse the availability of the courts at the expense of state officials who must retain counsel to defend themselves is too clear to escape comment. As the court in *Clark v. Zimmerman*, 394 F.Supp. 1166 (M.D.Pa. 1975) observed:

> *Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for "malicious prosecution" or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mailing privileges the temptation is especially strong.* (Emphasis in original.)

*Id.* at 1177, *quoting Jones v. Bales*, 58 F.R.D. 453 (N.D.Ga.1972), *aff'd*, 480 F.2d 805 (5th Cir. 1973). By giving district courts the authority to dismiss "frivolous" actions brought *in forma pauperis*, 28 U.S.C. § 1915(d), Congress has provided a remedy to the instant situation.

The motions of plaintiff for leave to serve "supplemental" complaints alleging wrongs attributable to officials at Ossining and Attica are denied without prejudice to Sims' right to process such claims as an "original complaint" to be duly filed in this court. The motion of defendants to dismiss the instant complaint is granted.

So ordered.

---

1. A "frivolous" action under this section is one in which the plaintiff's realistic chances of suc-

cess are slight. *Clark v. Zimmerman*, 394 F.Supp. 1166, 1178 (M.D.Pa.1975).