Fred M. ANDERSON and Wayne Nelson, Plaintiffs,

Fred M. Anderson, Appellant,

v.

Thomas COUGHLIN, Commissioner, New York State Department of Corrections, Defendant-Appellee.

No. 85, Docket 81–2429.

United States Court of Appeals, Second Circuit.

Submitted Sept. 3, 1982.

Decided Jan. 26, 1983.

38

Fred M. Anderson, pro se.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y. (William J. Kogan, Asst. Sol. Gen., Wayne L. Benjamin, Asst. Atty. Gen., Albany, N.Y., of counsel), filed a brief for defendant-appellee.

Before KEARSE, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

While the issue before us—did a 12-hour "keeplock" in a maximum security state prison violate plaintiff-inmates' civil rights—is simply stated, its resolution is more complex and requires detailed analysis. Plaintiffs Fred M. Anderson and Wayne Nelson instituted this action against defendant Thomas Coughlin, Commissioner of the New York State Department of Corrections, for defendant's alleged violation of plaintiffs' civil rights in having ordered plaintiff-prisoners confined to their cells in the Great Meadow Correctional Facility on May 21, 1981 for "no reason" and without affording them "equal protection or procedural due process." Anderson appeals pro se from an order of the United States District Court for the Northern District of New York (Munson, J.) dated October 19, 1981 which dismissed the complaint. We affirm the district court's dismissal.

I

In May 1981 New York State Correction Officer Donna Payant became the first female prison guard murdered while on duty. Her death occasioned extensive publicity within the State. Commissioner Coughlin issued a directive calling for a statewide cell confinement of inmates (known as a "keep-lock" or "lockdown") so that correction officers throughout the State [1] could attend Payant's funeral on May 21, 1981.

On May 20, 1981 suit was brought in the United States District Court for the Southern District of New York by an inmate seeking to prevent the confinements authorized by Coughlin. *Flaherty v. Coughlin,* (S.D.N.Y. May 20, 1981). Late that afternoon District Judge Sweet held a hearing at which he enjoined the Commissioner "from instituting a keeplock except on an institution-by-institution basis arising out of emergency conditions or jeopardy to the safety or security of the [particular] institution" resulting from lack of sufficient personnel. He also ordered that officials attempt to minimize the necessity for general lockdowns. Accordingly, on the day of the funeral inmates were confined to their cells at only three of the State's 33 correctional facilities—the maximum security prison at Green Haven (site of the murder), the maximum security prison at Great Meadow and the medium security prison at Bayview.

For having been confined to their cells during the 12-hour keeplock at Great Meadow on May 21st plaintiffs instituted a pro se action each seeking $1000 in damages for violation of their civil rights, presumably under 42 U.S.C. § 1983. Their complaint was sent directly to Magistrate Conan in accordance with 28 U.S.C. § 636(b) and Rule 43(c)(4) of the General Rules for the Northern District of New York. The Magistrate ordered it filed as of June 16, 1981, granted plaintiffs leave to proceed *in forma pauperis* and ordered that service of process should issue without payment of fees. On June 30 plaintiffs filed a motion for summary judgment together with a supporting memorandum of law, which was denied as untimely by the Magistrate because defendant had not yet been served. Plaintiffs then amended their complaint to include reference to Fifth Amendment due process in addition to the previously asserted Fourteenth Amendment due process claim. Defendant sought and was granted a 30-day extension to respond to the complaint. In the meanwhile plaintiffs filed a motion for default judgment which was denied on the basis of the 30-day extension.

On July 21 defendant made a motion to dismiss the complaint under Fed.R.Civ.P. 12(b) for failure to state a claim upon which

---

1. Mrs. Payant's husband was also a New York State correction officer, serving at the Clinton Correction Facility.

relief may be granted. This motion was accompanied by an affidavit of Assistant Attorney General Mary Bisantz indicating that the keeplock was imposed for "non-punitive, administrative reasons occasioned by temporary lack of sufficient correctional personnel to staff the facility on that day." Magistrate Conan issued a report recommending that the defendant's motion be granted and the complaint dismissed. He explained that it is within the prison administration's discretion to determine whether departure of the guards created a sufficient security risk to require limited keeplock. Since the keeplock was a "one-time occurance [sic] . . . prompted by the guards attending a funeral service," he found that sufficient justification existed for the administrative decision made at Great Meadow.

The Magistrate's Report-Recommendation was delivered to plaintiffs on September 28, 1981. Nelson filed an Affirmation in Opposition to the Report on October 2, along with a Demand for Jury Trial. Nelson's objections to the Report amounted to a conclusory denial of "each and every justification given" for dismissal, and repetition of the basis of his complaint, i.e., that plaintiffs were not afforded due process before being locked-down for the day. On October 8 Anderson filed a motion to compel the defendant to answer proffered interrogatories; his papers did not contain objections to the Magistrate's Report. Chief Judge Munson reviewed the entire record and issued an order on October 20 approving the Magistrate's Report-Recommendation, granting defendant's motion to dismiss the complaint and dismissing all other motions as moot. Anderson timely filed a notice of appeal and a motion for leave to proceed *in forma pauperis* and for appointment of counsel on appeal. In the latter document he alleged that he was unable to respond to the Magistrate's Report because he was " 'in transit' as a Federal Prisoner."

## II

The only legal issue is whether the district court properly dismissed the complaint.

A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). A 12(b)(6) motion is addressed to the face of the complaint; a court ruling on a 12(b)(6) motion that wishes to consider matters outside the complaint in determining whether to dismiss may treat the motion as one for summary judgment under Rule 56, provided the parties are given notice that summary judgment is being considered and afforded reasonable opportunity to present pertinent material in response. *See* Fed.R.Civ.P. 12(b).

*Looking just at the allegations of the complaint* we cannot say that plaintiffs could under no circumstances prove that their constitutional rights were violated. If the Commissioner had personally singled plaintiffs out and for no reason whatever locked them in their cells for a day, they might be able to sustain their claim. The district court did not, however, view the complaint in a vacuum when it issued its dismissal order. Even though the October 20 order approves the Magistrate's Report which cites Rule 12(b)(6) as a recommended basis for dismissal, Judge Munson explicitly mentions that he made his ruling "[a]fter careful review of all the papers" contained in the record. Since he apparently did not notify the parties that he intended to treat the 12(b)(6) motion as one for summary judgment, and although no specific rule is cited as the ground for the district court's dismissal, we think the clear import of the procedure followed below is that the court intended to dismiss this pro se complaint as frivolous under 28 U.S.C. § 1915(d) (1976). *See Williams v. Field,* 394 F.2d 329, 330 (9th Cir.) (though the district court didn't express the basis for its dismissal, the Ninth Circuit found that § 1915(d) was the apparent ground), *cert. denied,* 393 U.S. 891, 89 S.Ct. 213, 21 L.Ed.2d 171 (1966).

Due to substantial recent increases in the volume of prisoner civil rights cases filed in

the federal courts and special considerations attaching to such cases, many districts, including the Northern District of New York, follow adaptations of a widely recognized procedure recommended for the handling of prisoners' pro se petitions. *See generally* Federal Judicial Center, *Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts* (1980) (hereinafter "FJC Report"). Standardized forms designed to assist the pro se complainant in stating his claim in a complete and comprehensible manner and in providing appropriate information for determination of *in forma pauperis* (IFP) status are used. *Id.* at 45 *et seq.* Magistrates perform the initial screening and processing of the forms. *Id.* at 49, 51–53; *see also* 28 U.S.C. § 636(b) (1976 & Supp. IV 1980); N.D.N.Y.R. 43(c)(4).[2]

The preferred practice is for the Magistrate first to consider the petitioner's economic status and decide whether to grant leave to proceed *in forma pauperis.* FJC Report, *supra* at 54, 57–58. If leave is granted, the Court/Magistrate should then determine whether dismissal is appropriate under 28 U.S.C. § 1915(d). *Id.* at 58.[3] In districts where the services of a Magistrate are utilized, the Magistrate submits a report and recommendation to the judge indicating his suggested disposition; the report is also mailed to the plaintiff and all parties who have been served. *See* 28 U.S.C. § 636(b); N.D.N.Y.R. 43(c)(4); FJC Report, *supra* at 59, 70. The parties then have ten days in which to file objections, *see* FJC Report, *supra* at 59, and the district judge makes a de novo determination regarding objected to portions of the report before rendering a final decision on dismissal. 28 U.S.C. § 636(b).

 While it is proper, *see Fries v. Barnes,* 618 F.2d 988, 989 (2d Cir.1980); FJC Report, *supra* at 73, and even recom-

mended that a decision to dismiss under § 1915(d) be made prior to issuance of process in order to spare the defendant the expense and inconvenience of answering a frivolous complaint, FJC Report, *supra* at 59, our Court has often admonished that extreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, *see, e.g., Fries v. Barnes,* 618 F.2d 988, 989 (2d Cir.1980); *Ron v. Wilkinson,* 565 F.2d 1254, 1257 (2d Cir.1980); *Lewis v. New York,* 547 F.2d 4, 5 (2d Cir.1976); *Cunningham v. Ward,* 546 F.2d 481, 482 (2d Cir.1976). Thus, sua sponte § 1915(d) dismissal may occur and is in some cases preferable after service of process and expansion of the record. *Brown v. Schneckloth,* 421 F.2d 1402, 1403 (9th Cir.) (per curiam), *cert. denied,* 400 U.S. 847, 91 S.Ct. 95, 27 L.Ed.2d 85 (1970); *Boruski v. Stewart,* 381 F.Supp. 529, 533 (S.D.N.Y.), *aff'd sub nom, Boruski v. United States,* 493 F.2d 301 (2d Cir.1974). Moreover, expansion of the record protects the unskilled litigant and enables the court to make an informed decision regarding the merits of an action by reference to the reality of the situation rather than by speculating as to the nature of the claim. *Harvey v. Clay County Sheriff's Department,* 473 F.Supp. 741, 745 (W.D.Mo.1979). Therefore, unless frivolity is facially apparent, it is "incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of same." *Jones v. Bales,* 58 F.R.D. 453, 464 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973), *cited in Boston v. Stanton,* 450 F.Supp. 1049, 1053–54 (W.D.Mo.1978). At whatever point it is clear that merit is lacking, the IFP action should be dismissed as frivolous under § 1915(d). *See id.*

---

**2.** In the Northern District prisoner civil rights complaints are deemed referred to the Magistrate upon delivery to him, without the need for individual referral orders in each case, *see* N.D. N.Y.R. 43(c)(4)(c), as is the recommended practice, *see* FJC Report, *supra* at 52.

**3.** It is proper procedure to allow an in forma pauperis filing when the IFP papers are facially sufficient and then dismiss per § 1915(d), even if the court had earlier determined that § 1915(d) dismissal was warranted. *Forester v. California Adult Authority,* 510 F.2d 58, 60 (8th Cir.1975).

Review of the facts recited above reveals that the district court in this case carefully followed the outlined recommended procedure. In light of this and our analysis *infra* of the appropriateness of § 1915(d) dismissal, we are persuaded that the lower court dismissed this case as frivolous under § 1915(d).

## III

Title 28 U.S.C. § 1915(a) (1976) permits federal courts to allow the commencement of actions without prepayment of fees by persons unable to afford the cost of litigation. In order to ensure that this privilege will not be abused, Congress provided in § 1915(d) that IFP proceedings may be dismissed by the court sua sponte "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." *See Fletcher v. Young,* 222 F.2d 222, 224 (4th Cir.) (per curiam), *cert. denied,* 350 U.S. 916, 76 S.Ct. 201, 100 L.Ed. 802 (1955).

Many cases have expressed the view that the federal district courts are vested with especially broad discretion to deny state prisoners the privilege of proceeding IFP in civil actions against officials of the institution in which they are incarcerated. *See, e.g., Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979) (per curiam); *Milton v. Nelson,* 527 F.2d 1158, 1160 (9th Cir.1976); *Daye v. Bounds,* 509 F.2d 66, 68 (4th Cir.), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975); *Conway v. Fugge,* 439 F.2d 1397 (9th Cir.1971) (per curiam); *Williams v. Field,* 394 F.2d at 330–32; *Shobe v. California,* 362 F.2d 545, 546 (9th Cir.), *cert. denied,* 385 U.S. 887, 87 S.Ct. 185, 17 L.Ed.2d 115 (1966); *Holsey v. Bass,* 519 F.Supp. 395, 406 (D.Md.1981); *Boston v. Stanton,* 450 F.Supp. at 1053. One often-quoted case discusses the rationale for this conclusion:

> Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for "malicious prosecution" or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mail privileges the temptation is especially strong. As Justice Rehnquist has noted, "Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse." *Cruz v. Beto,* 405 U.S. 319, 327, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (1972) (dissenting).
>
> . . . .
>
> It is plain to this Court that courts need an extra measure of authority when faced with actions proceeding in forma pauperis—particularly where the action is brought by a prisoner seeking damages. And it is this court's conclusion that Congress has granted that extra authority by enacting 28 U.S.C. § 1915(d).

*Jones v. Bales,* 58 F.R.D. at 463–64. Prisoners proceeding IFP are not bound by the usual financial restraint on unwarranted litigation, and their expenditure of time in preparation for a lawsuit is often a relief from the tedium of prison life.[4] FJC Report, *supra* at 2. We keep firmly in mind the fact that the benefit of § 1915 is a privilege, not a right, *Williams v. Field,* 394 F.2d at 332, and that the court's "extra measure of authority" in dealing with § 1915 actions is necessary because frivolous suits unduly burden the courts, sometimes obscuring meritorious claims, occasion significant expenditures of public monies, and are a means by which plaintiffs can use the federal government to harass individual defendants. *Holsey v. Bass,* 519 F.Supp. at 406.

In light of these special considerations we must analyze what is meant by "frivolous"

---

4. Appellant is a prime example. During the brief period this action was before the district court he had six cases pending at the trial level and one awaiting appellate review. His familiarity with motion practice doubtless surpasses that of some members of the Bar.

as that term is used in the statute. Some courts choose to equate the notion with the standard for dismissal under Rule 12(b)(6). *See, e.g., Montana v. Commissioners Court,* 659 F.2d 19, 21 (5th Cir.1981) (per curiam), *cert. denied,* 455 U.S. 1026, 102 S.Ct. 1730, 72 L.Ed.2d 147 (1982); *Boyce v. Alizaduh,* 595 F.2d 948, 952 (4th Cir.1979). Others adopt the view that an action is frivolous if the plaintiff's realistic chances of ultimate success are slight. *Sims v. Zolango,* 481 F.Supp. 388, 391 n. 1 (S.D.N.Y.1979); *Boston v. Stanton,* 450 F.Supp. at 1053; *Clark v. Zimmerman,* 394 F.Supp. 1166, 1178 (M.D.Pa.1975); *Louisiana ex rel. Purkey v. Ciolino,* 393 F.Supp. 102, 106 (E.D.La.1975); *Jones v. Bales,* 58 F.R.D. at 464; *see also Urbano v. Sondern,* 370 F.2d 13, 14 (2d Cir.1966), *cert. denied,* 386 U.S. 1034, 87 S.Ct. 1485, 18 L.Ed.2d 596 (1967). One authority finds refuge in language used in *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), which employs a definition akin to that used in Rule 12(b)(6) dismissal. *See* FJC Report, *supra* at 61.

We think that those cases which adopt the *Anders* or Rule 12(b)(6) standard have overlooked significant distinctions between the considerations underlying the Federal Rules of Civil Procedure and those which gave rise to § 1915. The notice pleading principles embodied in Rules 8 and 12 are intended to remove technical obstacles impeding access to the federal courts. This liberal approach contemplates litigants whose time and funds are limited. *Boston v. Stanton,* 450 F.Supp. at 1053; *Jones v. Bales,* 58 F.R.D. at 464. Section 1915, on the contrary, is a statute that creates affirmative conditions which must be met in order to receive a special benefit not granted to all—*free* access. As such it demands that attention be paid to the conservation of scarce judicial resources and the fundamentally different nature of much IFP litigation. It is closely analogous to other statutes which call for more stringent pleading standards than those contained in the Federal Rules, such as, for example, the habeas corpus statute, 28 U.S.C. § 2255 (1976). These statutes, like § 1915 and unlike the Federal Rules, are rooted in considerations of economy and protection. *Harvey v. Clay County Sheriff's Department,* 473 F.Supp. at 743–44; *see also Jones v. Bales,* 58 F.R.D. at 463–64.

■ In light of these distinctions we reject the notion that the Rule 12(b)(6) standard is the sole basis for dismissal under § 1915(d). The court in *Boruski v. Stewart,* 381 F.Supp. at 533, scanned the case law generally and noted § 1915 dismissals where the plaintiff is engaged in repeated litigation of issues already determined, the allegations of the complaint are "beyond credulity," the complaint fails to state a claim upon which relief may be granted, or there is little chance of success on the merits in light of various defenses which may be asserted. We think the concept of "frivolous" embodied in § 1915(d) is broad enough to support a dismissal on any of these grounds.

## IV

■ We consider the entire record in this case[5], including defenses which have been or could be raised, *see Urbano v. Sondern,* 370 F.2d at 14; *Holsey v. Bass,* 519 F.Supp. at 408–11; *Clark v. Zimmerman,* 394 F.Supp. at 1178; *Louisiana ex rel. Purkey,* 393 F.Supp. at 108, 109–10; *Boruski v. Stewart,* 381 F.Supp. at 533–35, in order to assess appellant's chances of success and to determine whether the district court abused its discretion, *see Van Meter v. Morgan,* 518 F.2d 366, 368 (8th Cir.) (per curiam), *cert. denied,* 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975), in dismissing the complaint. We note that leniency accorded pro se plaintiffs when attempting to understand the claims raised in often inartfully

---

5. Court records in other actions may be considered as well. *Van Meter v. Morgan,* 518 F.2d 366, 368 (8th Cir.) (per curiam), *cert. denied,* 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975); *Conway v. Oliver,* 429 F.2d 1307, 1308 (9th Cir.1970) (per curiam); *Williams v. Field,* 394 F.2d at 332; *United States of America ex rel. Masucci v. Follette,* 272 F.Supp. 563, 565 (S.D.N.Y.1967).

worded complaints does not create a predisposition toward such plaintiffs in the substantive determination of whether their claims are frivolous. *Collins v. Cundy,* 603 F.2d at 827–28; *Serna v. O'Donnell,* 70 F.R.D. 618, 621 (W.D.Mo.1976).

■ To begin, plaintiffs have not alleged any facts which might give rise to an equal protection claim; all inmates were keep-locked on an institution-wide basis. Second, prisoners need not be afforded "procedural due process"—notice and a hearing—in every situation in which they are locked in their cells. For example, N.Y. Admin.Code tit. 7, § 251.6(f) (1979) provides that "all inmates . . . in a facility may . . . be confined in their cells . . . for the duration of any period in which the safety or security of the facility is in jeopardy." In *Gilliard v. Oswald,* 552 F.2d 456, 459 (2d Cir.1977), we ruled that where security is in doubt, the determination of what measures to pursue must be entrusted to the discretion and judgment of the prison superintendent. In the same vein, the Supreme Court recently remarked that "[t]he wide range of 'judgment calls' that meet constitutional and statutory requirements are confided to officials outside the Judicial Branch of Government." *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979). *See generally id.* at 544–48, 99 S.Ct. at 1876–78.

■ The standard of review where there is a challenge to the sufficiency of the basis for an emergency response must give the benefit of the doubt to the responsible administrative officials because it is unfair if not simply impossible for persons foreign to day-to-day involvement with the prison community later to reconstruct the conditions present at the time the emergency arose. *Gilliard,* 552 F.2d at 458 & n. 2. Prison authorities necessarily must be allowed wide discretion in the use of confinement for the purpose of protecting the safety and security of the prison and its general population. *Id.* at 459; *United States ex rel. Walker v. Mancusi,* 467 F.2d 51, 53 (2d Cir.1972). Thus, the prison superintendent's judgment in ordering confinement

should prevail "absent a clear showing of gross abuse." *Gilliard,* 552 F.2d at 459.

No gross or even minimal abuse is present in this case. The facts reveal that a substantial number of guards intended to be absent from duty on the day of the funeral. Consequently, defendant was faced with balancing the potential for danger due to insufficient staffing at the Great Meadow facility against the inconvenience caused to plaintiffs by being confined to their cells for 12 hours on a single day. Whatever deprivation plaintiffs may have suffered does not rise to the level of a constitutional violation. A practice may be undesirable, yet still not so abusive as to violate a constitutional right. *Sweet v. South Carolina Department of Corrections,* 529 F.2d 854, 859 (4th Cir.1975); *Scellato v. Department of Corrections,* 438 F.Supp. 1206, 1207 (W.D.Va.), *appeal dismissed sub nom, Scellato v. Zahradnick,* 565 F.2d 158 (4th Cir.1977).

■ Anderson's appellate brief seems to imply that the Commissioner created the emergency situation in question by issuing a directive which gave all correction officers paid time off to attend the funeral. Government counsel argue that emotions were running at such a high pitch that the officers would have taken the day off with or without permission. We note that the defendant as an administrative officer is protected by the qualified defense of immunity available to officers of the executive branch of government who carry out the responsibilities of their office in good faith. *See Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–1692, 40 L.Ed.2d 90 (1974). The dual subjective-objective test of good faith in this context requires that in order to be immune from damage actions the executive official must have had a good faith belief that he was acting properly and there must have been reasonable grounds for that belief in light of all the circumstances as they reasonably appeared at the time. *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. at 247–48, 94 S.Ct. at 1691–1692; *McKinnon v.*

*Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). We think that there were reasonable grounds for the Commissioner's belief that he acted properly, and that the district court safely relied on these factors. Absent more than plaintiffs' bare assertion that defendant issued his directive with actual malice or in ignorance or disregard of settled, indisputable law regarding the constitutional rights of his charges, the immunity defense applies. *See Wood v. Strickland,* 420 U.S. at 321, 95 S.Ct. at 1000. Plaintiffs failed to indicate on what basis they concluded that the Commissioner violated this standard. In addition, the fact that officials acting for the defendant did not order keeplocks in the vast majority of the State's prisons lends support to the conclusion that the defendant was not acting with malice or in disregard of the law.

Plaintiffs' reasonable chance of ultimate success on the merits of their claim is slight. This action is therefore frivolous under 28 U.S.C. § 1915(d), and the district court did not abuse its discretion in dismissing the complaint. We affirm.

WINTER, Circuit Judge, concurring in the result:

 I concur in Part IV of Judge Cardamone's decision. Because I disagree with a legal conclusion he draws in Part II and believe that much of the discussion in Parts II and III is unnecessary, I state my reasons for affirmance separately.

First, I do not agree that the complaint is sufficient to survive a 12(b)(6) motion. The complaint states:

> Defendant is responsible for having petitioners illegally confined to their cells on May 21, 1981. He had no reason for action, did not charge plaintiff with any violations of NY State Law or afford them equal protection in procedural due process of the 14th Amendment US Constitution.

I believe this conclusory allegation is not adequate as a matter of law. Apart from the word "illegally" and references to the Constitution, the complaint simply states that appellant was placed in his cell "for no reason." There are no factual allegations that he was singled out for special punishment, was subjected to inhumane or specifically unreasonable treatment, or was the victim of defective procedures. *Compare Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*pro se* allegations of solitary confinement for disciplinary purposes in conditions which aggravated a pre-existing foot injury and circulatory ailment).

The almost infinitely malleable nature of the complaint is demonstrated by the widely contrasting descriptions offered by my colleagues. On the one hand, Judge Cardamone hypothesizes that it may allege that "the Commissioner had personally singled plaintiffs out and for no reason whatever locked them in their cells...." On the other hand, Judge Kearse describes it as alleging a general "keeplock." In the case of the former, the hypothesis arrived at is at variance with the actual issue, while in the case of the latter, the conclusion that a "keeplock" was alleged is drawn, not from the four corners of the complaint, but from the action of the district court and papers filed with us.

In truth, there is almost no limit to the sets of facts which might be proven under Anderson's complaint if we are simply to let our imaginations run free. Indeed, claims of singling out for purposes of racial discrimination or punishment for the exercise of first amendment rights fit more comfortably within its language than the actual fact of a general "keeplock."

The complaint thus does not give notice of Anderson's claim. Judge Kearse is mistaken in viewing my position as requiring the plaintiff to anticipate and refute reasons which the defendant may offer to justify his actions. A federal constitutional claim relating to correctional decisions must allege a procedural defect, a "cruel and unusual" impact, or an impermissible motive. Anderson gives no notice as to which of these claims, if any, he is pursuing. In this situation, a defendant is not informed of what actions he or she must justify. The

defendant was able here to flesh out the complaint by affidavit attached to his 12(b)(6) motion, only because the events of May 21, 1981, had achieved statewide notoriety and had been previously litigated.

My colleagues' opinions cite only very general authority to support their view of the sufficiency of the notice given by the complaint. I conclude, therefore, that on the facts the holding goes beyond any prior decision, a result at odds with Judge Cardamone's critical description of the problems arising from the extensive use—and misuse—of the privileges accorded by 28 U.S.C. § 1915(a) (1976). Those problems are not lessened by issuing an invitation to prisoners to file *in forma pauperis* complaints alleging that their cell doors were locked "illegally" and "for no reason." The liberality accorded *pro se* pleadings does not relieve them wholly of the obligation to inform the court and their adversaries of the nature of their claim. The solicitude traditionally afforded *pro se* litigants can be preserved by liberality in allowing amendment. In my view, this complaint should have been dismissed *sua sponte* by the district court without service but with leave to amend.

At this stage, however, I see no such prejudice arising out of the failure to give appellant notice in the district court that the 12(b)(6) motion would be treated as a motion for summary judgment as to call for a *sua sponte* reversal on those grounds. Appellant asks only that we rule on the underlying issue of law. He has stated the facts in his brief before us and his version poses the very issue of law decided by the district court. His brief states:

> On the 21st day of May, 1981, appellant was confined to his cell, as were the approximate one thousand prisoners in Great Meadow Correctional Facility, hereafter 'G.M.C.F.', Comstock, New York. This confinement was pre-planned by appellee to facilitate and promote an obsequy for a recently slain guard, see p. 14 as Indexed. This pre-planned 'General Lockdown' was formulated at least 72 hours in advance, see appellants *Exhibit A.*

Exhibit A is a newspaper account of the "keeplock." With the parties in essential agreement as to the underlying facts,[1] the failure to give notice under 12(b)(6) is totally harmless.

In my view, the "keeplock" does not amount to a violation of the Constitution. Appellant was not singled out for individualized disciplinary action and, therefore, notice and a hearing were not required. A one-day "keeplock" does not impose inhumane conditions such as to foreclose prison authorities from allowing guards to attend the funeral of a colleague who has been murdered by inmates. Attending the funeral may be a serious matter so far as the morale of the guards is concerned, and the decision taken was within the range of prison officials' discretion. I see no serious federal constitutional issue. *See Gilliard v. Oswald,* 552 F.2d 456 (2d Cir.1977). Whether other circumstances may justify a "keeplock" is not before us.

I concur in the affirmance of the judgment.

KEARSE, Circuit Judge, dissenting:

With all due respect for the majority's views, I cannot concur in its judgment. In my view, the complaint could not properly be dismissed pursuant to Fed.R.Civ.P. 12(b)(6); the nature of the defendant's opposition to the claim raised issues of fact and made inappropriate, on the present record, a summary judgment pursuant to Fed. R.Civ.P. 56; and these factors plus proceedings in a related case demonstrate that appellant's claim could not properly be dismissed as frivolous pursuant to 28 U.S.C. § 1915(d) (1976).

### A. *Inappropriateness of Rule 12(b)(6) Dismissal*

Plaintiff-appellant Fred M. Anderson is appealing from a judgment of the United

---

1. If there is a factual issue in this case, it is whether the Commissioner instigated the "keeplock" to encourage the guards to attend the funeral or had no choice in the face of a quasi "job action" by the guards. Since I regard this issue as legally irrelevant, I see no need for a trial.

States District Court for the Northern District of New York dismissing his complaint pursuant to defendant's motion under Rule 12(b)(6). The complaint, filed under 42 U.S.C. § 1983 (1976), is succinct. It alleges that on May 21, 1981, Anderson, a prisoner at the Great Meadow Correctional Facility ("Great Meadow") was confined to his cell (a process known as "keeplock") by the action of defendant Thomas Coughlin, Commissioner of the New York State·Department of Corrections ("Department"), without any reason and in violation of Anderson's rights under the Fourteenth Amendment to the Constitution.

Judge Winter finds the complaint insufficient on its face, apparently because Anderson does not allege that he was "singled out" for the action alleged to have been irrational.[1] In my view if the keeplock was imposed for no reason, as alleged, the prisoner would have an arguable constitutional claim, whether he were the only prisoner so confined, or one of 22,000 so confined (as Coughlin originally ordered, see Part C infra), or one of some intermediate number so confined, as was actually the case.

I therefore agree with Judge Cardamone that one cannot conclude, looking solely at the complaint, that it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), and agree that Anderson's complaint could not properly be dismissed pursuant to Rule 12(b)(6), Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

B. *Inappropriateness of Summary Judgment*

Although Coughlin's motion to dismiss was styled a Rule 12(b)(6) motion and the court stated that it granted the motion, it appears to me that what the district court did in substance was to grant summary judgment against Anderson. Coughlin's motion relied on facts that did not appear in the complaint but rather were raised in an affidavit of Coughlin's counsel. Thus, while the complaint alleged that there was no reason for the keeplock, the affidavit suggested that there were reasons: "nonpunitive, administrative reasons occasioned by the temporary lack of sufficient correctional personnel to staff the facility on that day." (Affidavit of Mary E. Bisantz, sworn to July 17, 1981, ¶ 3 ("Bisantz Aff.").)

The United States Magistrate to whom the matter was referred accepted Coughlin's representation, found that "the keeplock was a one-time occurrence [sic] that was prompted by the guards attending a funeral service ...," and concluded that "a sufficient justification existed for the administrative decision of this limited keeplock."[2] Magistrate's Report dated Sept.

---

**1.** Judge Winter also views the complaint's allegation that there was "no reason" for the keeplock as impermissibly conclusory and suggests that the complaint should have been dismissed but with leave to amend. I disagree.

> [T]he function of a pleading in federal practice is to inform a party of the nature of the claims and defenses being asserted against him and the relief demanded by his adversary. The rules reflect a realization that the supposed effectiveness of pleadings in narrowing and defining the issues is largely a myth, this function being more effectively performed by discovery, summary judgment, and pretrial conferences.[15]
>
> [15] ... *Von Mailath v. Order of Daughters of Divine Redeemer*, D.C.Pa.1950, 10 F.R.D. 420 (development of facts should be accomplished through discovery and the like, and not by the exercise of discretion requiring additional pleadings).

5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1182, at 12 (1969) (other footnote omitted). Here Anderson's conclusory pleading that there was "no reason" for the keeplock was adequate to give Coughlin notice of the claim against him. The rules do not require a plaintiff to elaborate on such a negative by setting up and knocking down in his pleading particular reasons that may be asserted by the defendant.

**2.** The magistrate relied on *Johnson v. Coughlin*, 81 Civ. 901 (N.D.N.Y. Aug. 25, 1981), dismissing a § 1983 complaint by other inmates of Great Meadow that challenged the same keeplock and alleged that the reason for the keeplock was to allow guards to attend the funeral of a fellow guard. Judge Foley dismissed the *Johnson* complaint on the ground that it did not state a claim that rose to a constitutional level.

48

18, 1981, at 2. The magistrate recommended that Coughlin's motion be granted.

The district court, after reviewing "all of the papers" in the record,. District Court Order dated Oct. 19, 1981, at 1 ("Order"), approved the Magistrate's Report and dismissed the complaint, *id.* at 2. Thus, it clearly appears that the grounds for the dismissal were not found within the four corners of the complaint, and that the court instead rejected on the merits Anderson's contention that there was no reason for the keeplock, because it accepted Coughlin's assertion that he had a valid reason, namely a shortage of guards.

Given the state of the record, this was an inappropriate use of the summary judgment device. As a general matter, issues as to the *motive and intent* with which actions were taken are not appropriate for determination on summary judgment. *E.g., EEOC v. Home Insurance Co.,* 672 F.2d 252, 257 (2d Cir.1982); *Schmidt v. McKay,* 555 F.2d 30, 37 (2d Cir.1977). While complaints charging public officials with violation of a plaintiff's civil rights have been made more amenable than others to a summary and early determination where a defense of absolute or qualified ("good faith") immunity is available, *see Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2737–39, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 507–08, 98 S.Ct. 2894, 2911–2912, 57 L.Ed.2d 895 (1978),[3] *this hardly means that such a plaintiff should be denied all discovery, e.g., Harlow v. Fitzgerald, supra,* 102 S.Ct. at 2740 (Brennan, J., concurring). A plaintiff normally should at least be permitted to obtain disclosure as to, for example, the existence *vel non* of the facts that the defendants claim motivated them.

In the present case, so far as appears from the record before us, the court did not inform Anderson, pursuant to Rule 12(b), that it would treat Coughlin's Rule 12(b)(6) motion as one for summary judgment,[4] and I see no basis for believing that Anderson was given a reasonable opportunity to counter Coughlin's proffered reasons for the keeplock. The affidavit on which the dismissal was based asserted that there was a shortage of guards, but it did not state any facts as to the number of guards normally on duty at Great Meadow or the number available on May 21. Even leaving aside questions as to Coughlin's bona fides,[5]

---

**3.** The majority's discussions of the defense of qualified immunity, opinion of Cardamone, J., *ante* at 44–45, and the bona fides of prison officials' decisions to improve the morale of the prison guards, opinion of Winter, J., *ante* at 45–46, are premature. "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official," *Harlow v. Fitzgerald, supra,* 102 S.Ct. at 2737, and the burden of establishing this affirmative defense is on the defendant, *see id.* at 2739; *cf. id.* at 2735–36. Coughlin has not filed an answer, and the conclusory assertion in his counsel's affidavit on the Rule 12(b)(6) motion would hardly suffice to sustain his burden of proof.

I also find premature the majority's reliance on *Gilliard v. Oswald,* 552 F.2d 456 (2d Cir. 1977), for the proposition that the one-day keeplock at issue here does not give rise to a constitutional claim. *Gilliard* involved an initial prisonwide keeplock, followed by the keeplock of some 140 prisoners, in the course of an investigation into repeated assaults by prison inmates on other inmates. Whatever the views of the *Gilliard* majority as to the appropriate scope of prison officials' discretion to order a keeplock in those circumstances, and whatever the applicability of those views to the broader but shorter keeplock imposed here, it must at least be recognized that *Gilliard* was decided after a trial. There was no suggestion that the case should have been dismissed on summary judgment or as "frivolous" at some early stage.

**4.** Rule 12(b) provides in part as follows:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**5.** Questions have been raised as to Coughlin's good faith, both in this and in related litigation. Here Anderson contends in his brief on appeal, as he did in a memorandum filed in the district court, that in fact there was no emergency shortage of guards until Coughlin himself instigated the shortage by means of a statewide directive, *see* Part C *infra,* that prompted guards to take the day of May 21 off with full pay to attend the funeral of a slain fellow

therefore, at a minimum Anderson should have been given an opportunity to discover whether there was, as Coughlin asserted, a shortage of guards at Great Meadow on May 21.[6] Instead, Anderson was afforded no discovery whatever. The district court dismissed the complaint and simultaneously dismissed as moot all of Anderson's pending motions, Order at 2, apparently including an October 8, 1981 motion to compel Coughlin to answer interrogatories previously served.[7]

On the present record, therefore, the district court could not properly grant summary judgment.

## C. *Inappropriateness of a Finding of Frivolity*

Judge Cardamone imputes to the district court not an intention to grant summary judgment, but rather an intention to dismiss Anderson's complaint as frivolous under 28 U.S.C. § 1915(d). Section 1915(d) provides that in a proceeding in forma pauperis, such as the present action, the court "may dismiss the case . . . if satisfied that the action is frivolous." Even if I believed the imputation were correct, I would not hold the dismissal sustainable on this basis.

First, I take issue with Judge Cardamone's conception of the nature of frivolity: it seems very nearly to equate frivolity with lack of merit.[8] Thus, he states, *ante* at 41, that "[a]t whatever point it is clear that merit is lacking, the [in forma pauperis] action should be dismissed as frivolous under § 1915(d)." I would suppose that every claim that was successfully defended could be said to have lacked merit; but that hardly means that it was frivolous. A claimant may ultimately lose, for example, on a claim on which he had previously won a preliminary injunction. Or he may successfully oppose a motion for a directed verdict although the trial judge confidently and accurately predicts that the jury will find against him. Or his claim may be rejected solely because of an affirmative defense such as the statute of limitations. While at some point it has become clear that the claimant's case lacked merit, it hardly seems appropriate to characterize

guard. In the related case of *Flaherty v. Coughlin*, 81 Civ. 3077 (S.D.N.Y. May 20, 1981), Flaherty raised this and other arguments, and at the hearing on Flaherty's motion for injunctive relief, Judge Sweet stated that Coughlin's directive carried the implication of a punitive intent. (May 20, 1981 hearing at 20.)

In a later hearing in *Flaherty*, Coughlin's counsel argued that as a matter of law Coughlin's actions were within the scope of his discretion, but even he described them as "perhaps questionable actions." (Jan. 13, 1982 hearing at 4.) At that hearing Judge Brieant stated, "Now, maybe this case is amenable to summary judgment, maybe. I doubt it." (*Id.* at 17.)

6. The majority states that

[t]he facts reveal that a substantial number of guards intended to be absent from duty on the day of the funeral. Consequently, defendant was faced with balancing the potential for danger due to insufficient staffing at the Great Meadow facility. . . .

Opinion of Cardamone, J., *ante* at 44. I have found in the record no evidence as to the number of guards who "intended" to be absent from Great Meadow, the number who were absent, or the number normally on duty.

I think the context of the events preceding the May 21 keeplock should lead the court to exercise more, not less, than its usual amount of caution in dealing with conclusory allegations such as those advanced here by Coughlin's counsel. As discussed in Part C *infra*, Coughlin originally had ordered the one-day keeplock of all prisoners in all major penal institutions in the state. After he was enjoined in *Flaherty v. Coughlin, supra*, to make his decision on an institution-by-institution basis to avoid keeplocks that were unnecessary (an injunction to which he vigorously objected), it apparently turned out that at at least twelve of those fifteen institutions there was not such a shortage of guards as to warrant the keeplock. The court should at least require disclosure of the facts as to whether or not there was such a shortage at Great Meadow.

7. The interrogatories apparently included questions as to why the keeplock was imposed and how the decision to impose it was reached.

8. I also find unsound the suggestion that because § 1915(d) governs in forma pauperis litigation it calls for "*more* stringent pleading standards than those contained in the Federal Rules." Opinion of Cardamone, J., *ante* at 43 (emphasis added). When an in forma pauperis litigant proceeds pro se, as Anderson does here, his pleading must be given the benefit of the doubt. *Haines v. Kerner, supra*.

the claim as "frivolous." In *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the Supreme Court made clear that frivolity and lack of merit are not coextensive. There, the Court disapproved a state appellate procedure permitting an assigned attorney to withdraw from the appeal on the basis of his statement that the appeal would be without merit, but approved a withdrawal procedure that would be based on the attorney's statement that the appeal would be wholly frivolous. The Court stated that "legal points arguable on their merits" are "therefore not frivolous." *Id.* at 744, 87 S.Ct. at 1400.

Second, although I would agree with Judge Cardamone that there are cases in which the complaint is sufficiently well drafted to withstand a Rule 12(b)(6) motion, but in which a lack of factual support will later transpire and make appropriate a dismissal without lengthy discovery or trial, I believe the latter part of that construct does not yet apply to this case. For the reasons stated in Part B above, I do not view the present record as delineating a case ripe for a determination on its merits, much less a determination that it is so devoid of arguable merit as to be considered frivolous.

Finally, while I express no opinion as to the likelihood that Anderson would have succeeded on the merits, I view the proceedings in the related case of *Flaherty v. Coughlin,* 81 Civ. 3077 (S.D.N.Y. May 20, 1981), as demonstrating that claims within the ambit of Anderson's complaint raise legal points that are arguable on their merits.

The events leading to the keeplock began on or about May 16, 1981, with the slaying of Donna Payant, a guard at the Green Haven Correctional Facility. On May 20, Coughlin issued a directive that on May 21, the day of the funeral, all prisoners in all major state correctional facilities (totaling some 22,000 inmates) would be confined to their cells for 12–15 hours (in addition to the normal 10-hour confinement to their cells for sleeping purposes), and that all guards who so desired would be given the day off with pay so that they could attend the funeral. *Flaherty v. Coughlin* was commenced on May 20 by an inmate at the Clinton Correctional Facility on behalf of himself and others similarly situated, seeking a temporary restraining order against implementation of the keeplock directive.

Flaherty, like Anderson in the present case, *see* note 5 *supra,* suggested that Coughlin's directive was not in fact *responsive* to an anticipated shortage of guards but rather was the *cause* of any anticipated shortage. Flaherty also contended that even with Coughlin's guarantee of pay for guards who took the day off to attend the funeral, Coughlin did not know how many guards would take advantage of the guarantee, and hence could not know that at any particular institution there would be a shortage of guards and a need for a keeplock.

During the hearing on the motion, Judge Sweet suggested that Coughlin rescind his across-the-board order and instead assess the need for a keeplock on an institution-by-institution basis. Coughlin, through his counsel, opposed the suggestion. The court also suggested that Coughlin might rescind the directive insofar as it promised pay to absent guards, on the ground that the guarantee of pay would tend to encourage the guards' absence. Coughlin rejected the suggestion on the ground that, with the correctional officers' emotions running so high, it would be counterproductive to withdraw his promise of pay. Coughlin's counsel argued that the keeplock was not intended to punish the 22,000 inmates for Mrs. Payant's death, but the court found that "it certainly has that implication." (May 20, 1981 hearing at 20.) The court suggested that Coughlin might be carrying out the collective intent of the correction officers to punish the inmates. (*Id.*)

Litigation arising out of Coughlin's order of the May 21 keeplock thus encompasses a fundamental question as to whether the Commissioner of Corrections has the unfettered discretion to punish all inmates at all of New York's major prisons by a one-day

keeplock for the murder, by a person or persons unknown, of a guard at one of the institutions.[9] I am unable to conclude, with my colleagues, that this is not even an arguable legal question.

Ultimately, in *Flaherty v. Coughlin,* Judge Sweet granted a limited injunction. Having found, *inter alia,* that a keeplock without reason would deprive the prisoners of their rights (*id.* at 13)[10] and that there were substantial questions going to the merits (*id.; id.* at 24), the court granted the following injunctive order:

> That the Commissioner is enjoined from instituting a keeplock except on an institution-by-institution basis arising out of emergency conditions or jeopardy to the safety or security of the institution; and further, he is directed to take all necessary action to minimize any conditions which might result in the imposition of a keeplock.

(*Id.* at 26.) Coughlin's counsel's immediate response was, "I can tell you that this is not acceptable to the Department . . . ." (*Id.* at 27.)

Notwithstanding his initial opposition, Coughlin apparently did make some sort of an institution-by-institution decision, with Great Meadow being one of three institutions in which the keeplock was imposed. It may well be demonstrable that the keeplock at Great Meadow was for nonpunitive reasons and was occasioned by the lack of security personnel, as Coughlin's counsel's affidavit in the present case has asserted. Or it may be that the punitive "implication" seen by Judge Sweet would be borne out if, for example, Coughlin failed to provide any facts to substantiate his assertion that there

was a shortage of guards at Great Meadow. But in any event, it seems to me that Anderson's claim that the keeplock at Great Meadow was unreasonable presents arguable issues and hence cannot be considered frivolous.

I would reverse the judgment dismissing Anderson's complaint and remand for appropriate further proceedings.

---

**9.** Coughlin's counsel's affidavit in support of the motion to dismiss the complaint in the present case argued that "[e]ven punitive segregation for merely one day would not be a violation of an inmate's constitutional rights" (Bisantz Aff. ¶ 3), relying on *McKinnon v. Patterson,* 568 F.2d 930 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). *McKinnon* hardly answers the question posed here, however, since the punitive keeplock in *McKinnon* was imposed on prisoners whose own conduct arguably merited punishment.

**10.** Coughlin's counsel concurred in this view:

> THE COURT: . . . [T]he placing of keeplock, the deprivation of normal routine, prison routines, does constitute a deprivation of a right.
> You don't really argue with that? Let's assume it was totally irrational, it would be a deprivation, don't you agree?
> MR. RYAN [Attorney for Coughlin]: Yes, Your Honor.

